**Richard Eppink** (ISB No. 7503)
ritchie@wrest.coop
**David A. DeRoin** (ISB No. 10404)
david@wrest.coop
**Wrest Collective**
812 W. Franklin St.
Boise, ID 83702
208-742-6789 (phone)

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **AVALON HARDY**, <br><br> Plaintiff, <br><br> vs. <br><br> **MICHAEL KISH**, **TROY DEBIE**, **KYLE CARD**, and **STEVEN MCCLAIN**, in their individual capacities, and **JOHN/JANE DOES 1–10**, other law enforcement officers whose true names are unknown, in their individual capacities, <br><br> Defendants. | Case No. 1:23-cv-306 <br><br> **COMPLAINT** <br><br> **(JURY DEMANDED)** |

On June 24, 2022, the United States Supreme Court handed down its opinion in *Dobbs v. Jackson Women's Health Organization*, overruling the nearly half-century old precedent of *Roe v. Wade* and tossing the nation into political turmoil. Across the country, hundreds of thousands of Americans turned out in both protest and counter-protest, some celebrating the legal sea change and others decrying it.

COMPLAINT – Page 1

Boise, Idaho, where the Idaho legislature had been passing laws to restrict the right to abortion for many years before *Dobbs*, was one hotbed of public assembly in immediate response to the new opinion. Four days after the decision was announced, on Tuesday, June 28, 2023, both those who support abortion access and those who want doctors, women, and others to be criminalized and jailed for abortions assembled at the same time in front of the Idaho statehouse.

Scores of people crowded together, with abortion access supporters, abortion access opponents, and Idaho State Police and other law enforcement officers intermingled near the capitol steps.



Tensions ran high. Some protesters carried rifles and other firearms:



The mixed crowd was tightly packed together, many arguing their views, with

police officers interspersed among them:



Avalon Hardy, the Plaintiff here, was there. It was a hot afternoon, with temperatures reaching into the 90s that day. As Ms. Hardy brought water to her mother, state troopers suddenly grabbed her wrists, yanked her arms behind her back, handcuffed her, and arrested her. The troopers then intentionally, and unnecessarily, led Ms. Hardy through a horde of hostile anti-abortion counter-protesters.

Defendants had Ms. Hardy taken to the Ada County Jail, where she was held without bond on a felony charge overnight, separated from her children and family and prevented from going to work and from attending to her small business in Garden City. The charge was felony battery of a police officer, allegedly because

Ms. Hardy had come into contact with an officer while in the crowd. But when it came time for the State to prove it had probable cause to charge Ms. Hardy with this felony, rather than make its case in court the State dropped the felony charge against her. The State then amended the charge to simple, misdemeanor battery.

Yet when the time then came for the State to prove even just the misdemeanor charge at trial, the judge acquitted Ms. Hardy without submitting the case to the jury. The trial court ruled that the State's evidence could not sustain any conviction. The evidence showed only "entirely incidental contact" from "Ms. Hardy attempting to go around the officer," the trial judge concluded. The judge went on to say that basic fairness demanded acquittal as well, ruling that the "ends of justice, I would tend to think after watching that video would also require this."

This action prays for remedy to the injustice Defendants wrought.

## **PARTIES**

1. Avalon Hardy, the Plaintiff, was born, raised, and has lived her whole life in Idaho, in the Treasure Valley. She is a Black woman. She lives in Boise with her six children and her partner, the children's father. Her children are 5, 6, 13, 14, 16, and 17 years old. A mother and businesswoman, she has run her own salon, Beautiful Creations, for half a decade in the Boise area. A photo of Ms. Hardy (far left) with her family:



2. Deeply involved in her community, Ms. Hardy has for years coordinated and hosted potlucks every Sunday in Veteran's Park in Boise, open to all. Since she started cosmetology school in 2017, she has given free haircuts at the Boise Rescue Mission to people experiencing homelessness. Through her salon, she collects donations of hygiene products for families who cannot afford tampons and pads. Ms. Hardy also helps collect and distribute personal care supplies for people in poverty and living unsheltered. She also helps youth struggling with substance abuse to find support. For the past three years, she has been a principal organizer of community Juneteenth commemoration events in Boise.

COMPLAINT – Page 6

3. Michael Kish was an Idaho State Police Sergeant present during the June 28, 2022, protest at the Idaho statehouse. He was dressed in plain clothes while policing the protest, acting under color of state law and purportedly performing official duties. He is sued in his individual capacity.

4. Troy DeBie was another Idaho State Police Sergeant present during the June 28, 2022, protest. DeBie signed a citation falsely alleging that Ms. Hardy shoved Kish repeatedly with her hands and chest. DeBie acted under color of state law and was purportedly performing official duties. He is sued in his individual capacity.

5. Kyle Card was an Idaho State Police Trooper also present during the June 28, 2022, protest. Card forcefully grabbed Ms. Hardy, handcuffed her, and arrested her. He acted under color of state law and was purportedly performing official duties. He is sued in his individual capacity.

6. Steven McClain was an Idaho State Police Trooper also present during the June 28, 2022, protest, and was involved with Defendant Card in forcibly arresting Ms. Hardy. He, too, acted under color of state law and was purportedly performing official duties. He is sued in his individual capacity.

7. John/Jane Does 1–10, whose true names are unknown, are other law enforcement officers who, on information and belief, did or ratified the acts that harmed Ms. Hardy and deprived her of her rights. Ms. Hardy will amend this complaint after discovery determines the identify of these Doe defendants. They are sued in their individual capacities.

**JURISDICTION**

8. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 over the plaintiff's claims because they arise under federal law, as well as under 28 U.S.C. § 2201.

9. Venue is proper with this Court under 28 U.S.C. § 1391(b), because all of the conduct the plaintiff complains about occurred in Idaho.

**FACTS**

10. Both anti-abortion protesters and protesters supporting abortion access assembled around the south, Jefferson Street steps of the Idaho Capitol building in Boise, Idaho, on June 28, 2022.

11. The United States Supreme Court's opinion in *Dobbs v. Jackson Women's Health Organization* had just been announced four days before.

12. The opinion unsettled decades of precedent, putting access to reproductive healthcare in many states, including Idaho, in peril and setting the nation on edge.

13. Scores of people with strong opinions on both sides of the issue showed up for the June 28, 2022, rally at the Idaho statehouse.

14. The crowd was tightly packed, with slight separation between those in favor of abortion access and anti-abortion protesters.

15. Police were present too, among them the defendants in this case, interspersed amongst the crowd.

16. Most of those at the protest were close together. Getting jostled and bumped during the rally was common and nearly unavoidable.

17. Defendant Kish wore plain clothes: a button-down shirt, a blue blazer, and slacks. He did not wear a visible badge or law enforcement identification card. He moved through the crowd in that outfit.

18. Press photos by Sarah A. Miller of the *Idaho Statesman* captured Defendant Kish as he moved through the crowd that day:





19. In the midst of the bustle of the crowd, Defendant Kish decided to stand in the middle of a cluster of protesters on both sides.

20. As they shouted during the protest, Defendant Kish observed protesters and counter-protesters in physical contact with each other, but did not intervene except to hold Ms. Hardy back from others.

21. As he did this, he intentionally physically contacted Ms. Hardy.

22. Sometime after physically holding Ms. Hardy back, on information and belief Defendant Kish conferred with other officers, including Defendant DeBie and perhaps Defendants Card and McClain and Doe Defendants, to arrange for Ms. Hardy to be arrested.

COMPLAINT – Page 10

23. Defendants Kish and DeBie caused Ms. Hardy to be arrested by physical force by Defendants Card and McClain and, on information and belief, other Doe Defendants.

24. Police arrested only two people at the protest that day, both of them women of color protesting in support of abortion access.

25. As a result of Defendants' actions, Idaho State Police issued a press release about Plaintiff's arrest, leading to press coverage across Idaho and beyond identifying Ms. Hardy by name, age, and city of residence. Some of the press coverage propagated Ms. Hardy's jail mugshot across the internet, where it is still found today.

26. Defendant DeBie signed an affidavit, directed to Idaho's Fourth Judicial District Court "under penalty of perjury pursuant to the law of the State of Idaho" to support charges against Ms. Hardy. On information and belief, Defendant DeBie provided the affidavit to the Ada County prosecuting attorney's office, intending that it be used to criminally charge and prosecute Ms. Hardy.

27. The affidavit purported to "set[] forth the basis for probable cause for the arrest" of Ms. Hardy. It averred that Ms. Hardy "began to shove Sergeant Kish repeatedly with her hands. Sergeant Kish was wearing a bussiness [sic] suit with his Idaho State Police Badge and issued firearm on his belt. He identified himself as a police officer to HARDY. She continued to shove him with her hands and chest."

28. This allegation was false.

29. Defendants had Ms. Hardy charged with battery of a police officer under Idaho Code § 18-915, a felony.

30. Because the charge was a felony, Defendants caused Ms. Hardy to spend the rest of day and night, into the following day, in jail, unable to care for her children and family and unable to attend to her work and small business.

31. Ms. Hardy continued to miss work to attend court because of the charges against her, as court proceedings were held only to be rescheduled.

32. When facing preliminary hearing, at which the State would have had to demonstrate probable cause for the felony charge, the State declined to proceed. Instead, it amended the complaint against Ms. Hardy to a simple misdemeanor battery.

33. The State took the misdemeanor battery to trial. It called but one witness: Defendant Kish.

34. Shown this still from a video of the incident, Defendant Kish testified that he did not hold his hand up against Ms. Hardy's breast:



On cross examination, he testified:

        Q. And it looks like your hand here is pressed
    up against her breast?

        A. I would say no, sir.

        Q. It looks like you are making contact with
    her in this photo?

        A. No, sir.

        Q. So there's no contact being made?

        A. It's not physically possible, I don't
    think, for my arm to bend that way, sir.

        Q. So is this your hand?

        A. No, sir. My arm is right here. I'd have to
    be able to bend my arm around this person, where
    I'm not pushing into her here. You don't see my arm
    at all. So I would say that's not my arm at all.

```
Q. So to confirm right here, this right here,
this thing I'm pointing out is not your hand?
A. I can't say that is, no.
```

35. Defendant Kish alleged during his testimony at trial that Ms. Hardy battered him two times at the protest: once when she "bump[ed]" into him as depicted in the photo in paragraph 34, above, and shortly before that when he said she "swatted" his hand.

36. Confronted at trial with statements from Defendant DeBie's probable cause affidavit in the case, Defendant Kish could not support them. He testified:

```
Q. I'm asking if you remember that.
    Did she push you repeatedly with her
hands?
A. No, I do not.
. . . .
Q. Again, just making sure. You do not
remember her shoving you repeatedly with her hands?
A. No, sir.
. . . .
Q. And that [Defendant DeBie] says that after
that, she continued to shove him with her hands and
chest. I'm asking you if you remember that
happening afterwards.
A. I don't remember that happening, no.
```

37. After the State rested its case at trial, the Court entered judgment acquitting Ms. Hardy completely, without submitting the case to the jury.

COMPLAINT – Page 14

38. The Court entered the acquittal pursuant to Idaho Criminal Rule 29, which directs that "[a]fter the prosecution closes its evidence or after the close of all the evidence, the court on defendant's motion . . . must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

39. In ruling, the Court noted on the record a "number of concerns" that it had about the prosecution of the case. It noted that Defendant Kish provided no statement in discovery, and that Defendant DeBie's affidavit caused concern, as "quite frankly, the witness today testified portions of it did not in fact happen – or that may have been his perspective, but I don't recall that. I don't recall the number of 'I don't recalls' taking place. Didn't recall a number of things there."

40. The Court also noted that "the officer [Defendant Kish] testified his hands did not make contact with Ms. Hardy. It's clear his hands were in contact with her. It shows at the beginning him pushing up against her with his left arm against her body as she appears, from the Court's position to be agitated and yelling at someone else, not at the officer, but towards someone else."

41. The Court went on to conclude that "the witness's [Defendant Kish's] testimony seemed to be, from the Court's perspective, contradicted by the very video introduced by the State. I'm surprised at a couple things. One may be the nature in which it was charged. This seems to be entirely incidental contact that I saw, what I noted in Ms. Hardy attempting to go around the officer."

42. The Court went even further, too, to note that "the ends of justice, I would tend to think after watching that video would also require this," with the judge stating that "I'm disappointed," and noting that Defendant Kish "was being asked questions about someone else's report and saying well, no that's not true, or this or that."

43. Before she was wrongfully arrested, Ms. Hardy as able to run her small business, a salon, full time. After the arrest, she had to drop her small business endeavor to a part-time project. She lost clients. Her children have been targeted at school. She had to cut back on her community service and volunteer work to accommodate the court process and cope with the stress of the proceedings against her. The arrest severely chilled her free expression and assembly, and she has been cautious of activism ever since.

44. She has suffered harm and damages, including emotional distress and psychological damage, as a direct and proximate result of Defendants acts and deliberate indifference to her rights.

45. She seeks all available damages, including punitive damages, against Defendants in their individual capacities, as Defendants' actions were malicious, oppressive, and taken in reckless disregard for her rights.

## CLAIMS FOR RELIEF

46. Ms. Hardy incorporates all of the allegations above into each of the following claims, as if she had restated them as part of each claim.

**1. Wrongful Arrest and Imprisonment / Unreasonable Seizure**
**Fourth and Fourteenth Amendments to the United States Constitution**
**42 U.S.C. § 1983**

47. Defendants lacked probable cause to arrest Ms. Hardy for anything she did at the June 28, 2022, protest.

48. Defendants caused her to be arrested anyhow, with some of the defendants physically effecting the arrest itself.

49. Defendants had Ms. Hardy arrested for a felony charge, resulting in her being jailed without bond overnight.

50. Defendants deprived Ms. Hardy of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

51. Defendants acted under color of state law, and they acted or purported to act in the performance of official duties.

52. Ms. Hardy suffered harm and damages, including emotional distress and psychological damage, as a direct and proximate result of Defendants' acts and deliberate indifference to her rights.

53. Ms. Hardy seeks all available damages including punitive damages against Defendants in their individual capacities, as Defendants' actions were malicious, oppressive, and taken in reckless disregard for Ms. Hardy's civil rights.

**2. Excessive Force**
**Fourth and Fourteenth Amendments to the United States Constitution**
**42 U.S.C. § 1983**

54. Defendants caused Ms. Hardy to be arrested on June 28, 2022, with Defendants Card and McClain and, on information and belief, some or all of the Doe defendants physically effecting the arrest itself.

55. There was no need for officers to use any force at all against Ms. Hardy that day.

56. There was no crime at issue, no threat to the safety of officers or others, and no resistance or effort to evade arrest.

57. The force used by Defendants Card and McClain and, on information and belief, some or all of the Doe defendants against Ms. Hardy was constitutionally unreasonable.

58. Defendants Kish and DeBie set in motion a series of acts, and also knowingly refused to terminate a series of acts, by Defendants Card and McClain and, on information and belief, some or all of the Doe Defendants, which Defendants Kish and DeBie knew or reasonably should have known would cause others to inflict constitutional injuries upon Ms. Hardy.

59. Defendants Kish and DeBie condoned, ratified, and encouraged excessive use of force upon Ms. Hardy.

60. Defendants deprived Ms. Hardy of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

61. Defendants acted under color of state law, and they acted or purported to act in the performance of official duties.

62. Ms. Hardy suffered harm and damages, including emotional distress and psychological damage, as a direct and proximate result of those defendants' acts and deliberate indifference to her rights.

63. Ms. Hardy seeks all available damages including punitive damages against Defendants in their individual capacities, as those defendants' actions were malicious, oppressive, and taken in reckless disregard for Ms. Hardy's civil rights.

### 3. Malicious Prosecution
### Fourteenth Amendment to the United States Constitution (Due Process)
### 42 U.S.C. § 1983

64. Defendants lacked probable cause to arrest Ms. Hardy for anything she did at the June 28, 2022, protest.

65. Defendants caused her to be arrested and prosecuted anyhow.

66. Defendants prosecuted Ms. Hardy with malice.

67. Defendants prosecuted Ms. Hardy for the purpose of denying her equal protection and denying her rights to freedom of speech and assembly under the First and Fourteenth Amendments to the United States Constitution.

68. Defendants improperly exerted pressure on the prosecutor, knowingly provided misinformation to the prosecutor, concealed exculpatory evidence, and otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation and continuation of legal proceedings against Ms. Hardy.

69. Defendants deprived Ms. Hardy of her rights under the Due Process guarantees of the Fourteenth Amendment to the United States Constitution.

70. Defendants acted under color of state law, and they acted or purported to act in the performance of official duties.

71. Ms. Hardy suffered harm and damages, including emotional distress and psychological damage, as a direct and proximate result of Defendants' acts and deliberate indifference to her rights.

72. Ms. Hardy seeks all available damages including punitive damages against Defendants in their individual capacities, as Defendants' actions were malicious, oppressive, and taken in reckless disregard for Ms. Hardy's civil rights.

### 4. Deliberate Fabrication of Evidence
### Fourteenth Amendment to the United States Constitution (Due Process)
### 42 U.S.C. § 1983

73. Defendants deliberately fabricated evidence that was used to criminally charge and prosecute Ms. Hardy.

74. Defendants continued their investigation of Ms. Hardy despite the fact that they knew Ms. Hardy was innocent, or were deliberately indifferent to Ms. Hardy's innocence, and the results of the investigation were used to criminally charge and prosecute Ms. Hardy.

75. Defendants deprived Ms. Hardy of her rights under the Due Process guarantees of the Fourteenth Amendment to the United States Constitution.

76. Defendants acted under color of state law, and they acted or purported to act in the performance of official duties.

77. Ms. Hardy suffered harm and damages, including emotional distress and psychological damage, as a direct and proximate result of Defendants' acts and deliberate indifference to her rights.

78. Ms. Hardy seeks all available damages including punitive damages against Defendants in their individual capacities, as Defendants' actions were malicious, oppressive, and taken in reckless disregard for Ms. Hardy's civil rights.

**5. Reckless or Deliberate Suppression of Evidence**
**Fourteenth Amendment to the United States Constitution (Due Process)**
**42 U.S.C. § 1983**

79. Defendants suppressed evidence that was favorable to Ms. Hardy from the prosecutor and the defense.

80. In suppressing the evidence, Defendants acted with deliberate indifference to Ms. Hardy's rights or for the truth.

81. Defendants deprived Ms. Hardy of her rights under the Due Process guarantees of the Fourteenth Amendment to the United States Constitution.

82. Defendants acted under color of state law, and they acted or purported to act in the performance of official duties.

83. Ms. Hardy suffered harm and damages, including emotional distress and psychological damage, as a direct and proximate result of Defendants' acts and deliberate indifference to her rights.

84. Ms. Hardy seeks all available damages including punitive damages against Defendants in their individual capacities, as Defendants' actions were malicious, oppressive, and taken in reckless disregard for Ms. Hardy's civil rights.

### 6. Freedom of Speech, Assembly, and Association / Retaliation
### First and Fourteenth Amendments to the United States Constitution
### 42 U.S.C. § 1983

85. Ms. Hardy was engaged in constitutionally protected activity during the June 28, 2022, protest, including exercising her constitutionally protected rights to political speech, assembly, and association.

86. Defendants conduct, including in arresting Ms. Hardy, violated her rights to free speech, assembly, and association under the First and Fourteenth Amendments to the United States Constitution.

87. As a result of exercising her constitutionally protected rights to political speech, assembly, and association, Ms. Hardy was subjected to adverse actions by Defendants.

88. Those adverse actions would chill a person of ordinary firmness from continuing to engage in the protected conduct.

89. There was a substantial causal relationship between Ms. Hardy's constitutionally protected activities and the adverse actions she suffered.

90. Defendants lacked probable cause to arrest Ms. Hardy for anything she did at the June 28, 2022, protest, yet Defendants caused her to be arrested anyhow.

91. Defendants also arrested Ms. Hardy when otherwise similarly situated individuals, including individuals not engaged in the same sort of protected activity, have not been arrested.

92. Defendants deprived Ms. Hardy of her rights under the free speech, assembly, and association guarantees of the First and Fourteenth Amendments to the United States Constitution.

93. Defendants acted under color of state law, and they acted or purported to act in the performance of official duties.

94. Ms. Hardy suffered harm and damages, including emotional distress and psychological damage, as a direct and proximate result of Defendants' acts and deliberate indifference to her rights.

95. Ms. Hardy seeks all available damages including punitive damages against Defendants in their individual capacities, as Defendants' actions were malicious, oppressive, and taken in reckless disregard for Ms. Hardy's civil rights.

## **PRAYER FOR RELIEF**

Ms. Hardy requests that the Court enter judgment in her favor, against defendants, and award the following relief:

1. Monetary damages to fairly and reasonably compensate her for the deprivation of their rights, including compensatory (emotional distress) and consequential damages, as well as punitive damages.

2. A declaration that Defendants violated Ms. Hardy's constitutional rights.

3. Any other appropriate declaratory or injunctive relief.

4. Pre-judgment and post-judgment interest at the highest lawful rate.

5. Attorneys' fees, costs, and other expenses of this action.

6. Any other relief that justice allows.

COMPLAINT – Page 23

## JURY DEMAND

Plaintiff demands a jury trial on all issues for which one is available.

**DATED**: June 28, 2023


**WREST COLLECTIVE**

/s/ Richard Eppink
Richard Eppink

/s/ David A. DeRoin
David A. DeRoin

**ATTORNEYS FOR PLAINTIFF**