UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AVALON HARDY,<br><br>     Plaintiff,<br><br>     v.<br><br>MICHAEL KISH, TROY DEBIE, KYLE CARD, and STEVEN McCLAIN, in their individual capacities, and JOHN/JANE DOES 1-10, other law enforcement officers whose true names are unknown, in their individual capacities,<br><br>     Defendants. | Case No. 1:23-cv-00306-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Avalon Hardy's motion for spoliation remedies (Dkt. 29). For the reasons described below, the Court will deny the motion.

## BACKGROUND

The factual background underlying this case is set forth in the Court's concurrently filed Memorandum Decision and Order on the defendants' motion for summary judgment. In short, Ms. Hardy was arrested in June 2022 while protesting the Supreme Court's decision in *Dobbs v. Jackson Women's Health*. She filed this

lawsuit seeking damages, injunctive, and declaratory relief as a result of constitutional violations stemming from her arrest. This motion, however, requests sanctions for spoliation of evidence. More specifically, she claims the defendants failed to preserve video surveillance footage from her arrest and the operations plan from the protest.

## A.    The Destruction of the Surveillance Footage

Ms. Hardy's arrest was ordered by Corporal Ketchum, who was watching the protest by video stream several blocks away at a "command post." *Ketchum Dep.* at 14:24–15:5; 19:5–9, Dkt. 29-17. The camera used in the command post was operated by the City of Boise. Cunha Decl. at ¶ 2, Dkt. 29-20. The City keeps a recording of the feed for 30 days, after which it is automatically overwritten. *Id.* City and state agencies may can request copies of the video feed within that 30-day window. *Id.* at ¶¶ 11, 15. Corporal Ketchum had access to the video because he was monitoring the protest from a command post in conjunction with Boise Police. *Ketchum Dep.* at 14:21–15:9; 20:9–23:24, Dkt. 29-17. After observing Ms. Hardy's conduct on the video stream, he ordered her arrest. *Ketchum Affidavit* at ¶ 5–6, Dkt. 27-10.

While in the command center, Corporal Ketchum never asked to save the video or whether it would be possible to obtain a copy. *Id.* at 25:11–26:8. Neither

the officer who drafted the police report and probable cause affidavit, Sergeant

DeBie, nor the approving officer, Lieutenant Kish, requested the video from the

City within the 30-day window. *DeBie Dep.* at 19:2–16, Dkt. 29-13. As such, the

footage was automatically deleted.

### B.    The Destruction of the Operations Plan

The operations plan was prepared in advance of the June 2022 protest and

was distributed to the state troopers working that day. *Kish Dep.* at 55:18–20, Dkt.

29-10. After the protest, pursuant to his usual practice, Lieutenant Kish sent the

physical copies of the operation plan to a shredder. *Kish Dep.* at 85:1–21; 89:21–

90:12, Dkt. 29-10. At that point, he still had a digital copy saved to his computer.

*Id.* at 69:5–8. That copy, however, was destroyed when Lieutenant Kish's

computer crashed in October 2022. *Id.* at 76:12–20; 80:5–9. Lieutenant Kish failed

to back up his files, including the operations plan, so no other versions of the

operations plan exist.

### LEGAL STANDARD

"Spoliation of evidence is the destruction or significant alteration of

evidence, or the failure to properly preserve property for another's use as evidence

in pending or reasonably foreseeable litigation." *Balla v. Idaho St. Bd. of*

*Correction*, 119 F. Supp. 3d 1271, 1282 (D. Idaho 2015) (citations and quotation

marks omitted). When a party seeks sanctions for spoliation for electronically stored information, often referred to in short as "ESI," that request is governed by Federal Rule of Civil Procedure 37(e). In contrast, if the spoliated evidence is not ESI, but physical evidence such as paper records, then the Court may impose sanctions for spoliation pursuant to its inherent discretionary power. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). Ms. Hardy seeks sanctions for the spoliation of both electronic and physical evidence, so both standards are relevant here.

A party seeking sanctions for spoliation of evidence pursuant to the Court's inherent authority must prove:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind'; and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence.

*Balla*, 119 F. Supp. 3d at 1282 (quoting *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 1010 (C.D. Cal. 2013)).

On the other hand, when a party seeks sanctions for spoliation of electronic evidence, the Court must follow the more stringent framework set forth in Rule 37(e). This rule operates as "a decision tree." *Oracle America, Inc. v. Hewlett Packard Enterprise Company*, 328 F.R.D. 543, 549 (N.D. Cal. 2018). It provides

as follows:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is *lost* because a party failed to take *reasonable steps to preserve it*, and it *cannot be restored or replaced* through additional discovery, the court:
>
> (1) Upon finding *prejudice to another party* from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) Only upon finding that the party acted with the *intent* to deprive another party of the information's use in the litigation may:
>
> > (A)    presume the lost information was unfavorable to the party
> >
> > (B)    instruct the jury that it may or must presume the information was unfavorable to the party; or
> >
> > (C)    dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

"The threshold inquiry is whether ESI has been 'lost,' which in turn requires a showing (a) that discoverable ESI existed when a duty to preserve arose but was not preserved due to a party's negligence failure to take reasonable steps to preserve it *and* (b) it cannot be restored or replaced." *Oracle America, Inc.*, 328 F.R.D. at 549. If the answer to both questions is yes, then the court can "proceed to impose non-dispositive measures to cure any resulting prejudice." *Id.* The remedies sought by Ms. Hardy, a presumption of unfavourability and adverse inference instruction, are only available if she can show "that the loss was caused by the party's intent to deprive its adversary of the information for use in the litigation." *Id.*

## ANALYSIS

Ms. Hardy requests sanctions because of the loss of the June 28, 2022 Operations Plan and the surveillance video recording from the protest. The Court will first address the surveillance video before turning to the Operations Plan.

### A.    Surveillance Video

The surveillance video is ESI and Ms. Hardy's request for spoliation remedies is therefore governed by Rule 37(e). As set forth above, "[t]he threshold inquiry is whether ESI has been 'lost.'" *Oracle America, Inc.*, 328 F.R.D. at 549. If so, then the Court may impose measures to cure the prejudice from the lost ESI. *Id.* However, in order for the Court to apply the sanctions sought by Ms. Hardy, she must also show "that the loss was caused by the party's intent to deprive its adversary of the information for use in the litigation." *Id.* The Court will begin with the first step of this inquiry—whether the video footage was lost before considering whether Ms. Hardy has made a sufficient showing of intent to deprive.

### 1.  The Video Footage was Lost.

To show that ESI has been "lost," Ms. Hardy must show (1) "that discoverable ESI existed when a duty to preserve arose;" (2) that ESI "was not preserved due to a party's negligent failure to take reasonable steps to preserve it;" and (3) it cannot be restored or replaced." *Id.* The Court agrees with Ms. Hardy that the surveillance footage was lost when Idaho State Police failed to preserve it.

*a.* Duty to Preserve

First, Idaho State Police had a duty to preserve the video footage. "The duty to preserve relevant evidence commences prior to litigation once a defendant reasonably anticipates an action may be forthcoming." *Sanders v. University of Idaho, College of Law*, 634 F. Supp. 3d 936, 940 (D. Idaho 2022). "[T]rial courts in this Circuit generally agree that, '[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 990 (N.D. Cal. 2012).

Ms. Hardy argues that the defendants were under an obligation to preserve the video footage immediately following the protest. She argues that litigation was reasonably foreseeable because two protestors were arrested at the *Dobbs* protest and, as such, "not only should it have reasonably foreseen litigation, but it actually *did* foresee litigation: a criminal prosecution." *Musse v. King County*, No. C18-1736-JCC, 2021 WL 4709875, at * 3 (W.D. Wash. Oct. 8, 2021). Here, Idaho State Police "had actual knowledge of its obligation to preserve the footage in connection with [the plaintiff's felony] criminal case." *Gregory v. State of Montana*, 118 F.4th 1069, 1078 (9th Cir. 2024).

Nonetheless, the defendants argue they did not have control of the video

footage. The footage was streamed on the day of the protest via a camera operated by the City of Boise. Cunha Decl. at ¶ 2, Dkt. 29-20. The City keeps a recording of the feed for 30 days, after which it is automatically overwritten. *Id.* City and state agencies may request copies of the video feed within that 30-day window. *Id.* at ¶¶ 11, 15. Officer Ketchum had access to the video because he was monitoring the protest from a "command post" in conjunction with Boise Police. *Ketchum Dep.* at 14:21–15:9; 20:9–23:24, Dkt. 29-17. In the defendants' view, the fact that the video was maintained and controlled by the City of Boise absolves them of any obligation to preserve it.

"[C]ourts have extended the affirmative duty to preserve evidence to instances where that evidence is not directly within the party's custody or control so long as the party has access to, or indirect control over, such evidence." *Cyntegra Inc. v. Indexx Labs, Inc.*, No. CV06-4170 PSG (CTx), 2007 WL 5193736, at *5 (C.D. Cal. Sept. 21, 2007). "Evidence in a party's 'control' has been interpreted to mean evidence that the party has the legal right, authority, or practical ability to obtain by virtue of its relationship with the party in possession of the evidence." *R.F.M.A.S. Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y. 2010). The City's camera provided the live feed, therefore, any video or footage was not within Idaho State Poilce's possession at the time of the arrest. Defendants,

however, did not attempt to obtain the video during the 30-day window. The relevant question, then, is whether Idaho State Police had the legal right, authority, or practical ability to obtain the video before it was deleted. It did.

Corporal Ketchum was present in the command post and was able to direct the camera to zoom in and pan to the left or right. *Ketchum Dep.* at 24:11–25-10, Dkt. 29-17. Despite his presence and use of the video live stream, he did not request that the video be preserved, nor did he ask whether it was possible to preserve the video. *Id.* at 25:11–26:8. Moreover, Corporal Ketchum, or any other State Police Officer, could have requested the video from the City. At a minimum, Idaho State Police had the practical ability to request the video. Cunha Decl. at ¶¶ 11, 15, Dkt. 29-20. Accordingly, for the purposes of spoliation, the Idaho State Police had control over the video and had an obligation to preserve it.

> *b.* Reasonable Steps to Preserve

Second, Idaho State Police failed to take reasonable steps to preserve the video. Several officers knew Ms. Hardy was arrested based on video footage and made no effort to find out whether that footage was recorded or preserved. Law enforcement officers are, or should be, well aware of their obligation to preserve evidence. In a recent case, the Ninth Circuit found the State of Montana's failure "to promptly determine how long the surveillance system preserved its information

was unreasonable, as was failing to proceed with appropriate dispatch in taking the actual steps necessary to download the video from the system before it was deleted." *Gregory*, 118 F.4th at 1078. The same is true here. Idaho State Police made no effort to find about whether the surveillance footage was recorded and, if so, how to ensure the footage was preserved. The failure to make even a cursory inquiry into preserving the video supports the conclusion that Idaho State Police failed to take reasonable steps to preserve it.

### *c.* Restored or Replaced

Finally, the evidence cannot be restored or replaced. The City of Boise stores the video footage for 30 days, after which it was automatically deleted. Cunha Decl. at ¶ 2, Dkt. 29-20. That 30-day window has long since elapsed and the video footage is lost.

### 2.  Intent to Deprive

Ms. Hardy requests the Court apply a presumption and an adverse inference instruction that the lost surveillance footage is unfavorable to the defendants. In order for these sanctions to be available, she must show the defendants acted with the intent to deprive her of the information's use in the litigation. Fed. R. Civ. P. 37(e)(2). "On its face, that is a demanding specific-intent standard." *Gregory*, 118 F.4th at 1080. The Ninth Circuit has instructed that this intent "is most naturally

understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot Hospitality Group LLC*, 95 F. 4th 730, 735 (9th Cir. 2024). Ms. Hardy cannot meet this standard.

The record simply does not support the conclusion that any Idaho State Officer willfully failed to preserve the video footage. She has not pointed to any evidence that any officer knew the footage could be preserved (or even existed) and failed to act. That is not to say the officers should not have preserved the video—they could and should have. The record before the Court, however, does not indicate that this failure was willful. Accordingly, Ms. Hardy's motion for spoliation sanctions is denied as to the surveillance footage.[1]

### B.    Operations Plan

Ms. Hardy seeks the same remedies for Lieutenant Kish's destruction of the Operations Plan as she does for the destruction of the surveillance video: a presumption and adverse inference instruction that the evidence is unfavorable to the defendants. Ms. Hardy claims both the shredding of the paper copies and the

---

[1] Ms. Hardy only requests remedies that require a showing of intent to deprive under Rule 37(e)(2). The present motion does not seek the more limited remedies provided for in Rule 37(e)(1) where intent to deprive is not required. Therefore, Court will not impose any sanction under rule 37(e)(1) at this time. If such a request is made by a separate motion in the future, the Court will address the issue at that time.

failure to back-up the file constitute spoliation. Although the destruction of the physical and digital copies of the Operations Plan are subject to different standards because the digital copy is ESI, the Court will evaluate them together. An element of both standards is that the party controlling the evidence had an obligation or duty to preserve it when it was destroyed. *See Balla*, 119 F. Supp. 3d at 1282 (quoting *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 1010 (C.D. Cal. 2013)); Fed. R. Civ. P. 37(e). Lieutenant Kish did not have any such obligation or duty at the time the digital and physical copies of the Operations Plan were destroyed.

As previously discussed, "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Apple Inc.*, 888 F. Supp. 2d at 990. Although the Court concluded that an obligation arose to preserve the video due to the foreseeability of Ms. Hardy's criminal prosecution, it's not clear the same reasoning applies to the Operations Plan. For one, the relevance of the Operations Plan to her criminal prosecution is unclear. Additionally, while the criminal prosecution may have been foreseeable immediately following Ms. Hardy's arrest, it is not clear that civil litigation was foreseeable. *Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 708–09 (S.D.N.Y. 2017) (suggesting "no case law supports the notion that

an arrest invariably triggers a duty to preserve evidence of the arrest for potential civil litigation.").

The cases cited by Ms. Hardy do not require a different result. For instance, *Bistrian v. Levi* concerned the destruction of surveillance footage of an assault in a prison. 448 F. Supp. 3d 454, 472 (E.D. Penn. 2020). The court held that "[w]hen an assault is deemed serious enough to warrant criminal prosecution, as the Taylor assault was, it suggests that it might also be more likely to lead to a civil lawsuit." *Id.* Key to this determination is that the assault took place in a prison and "not all prison assaults are prosecuted as crimes. Some are handled in internal disciplinary proceedings instead." *Id.* There is no similar context here that made civil litigation foreseeable either when the paper copies were shredded or when the digital copy was destroyed. Accordingly, Ms. Hardy's motion for spoliation remedies is denied.

## ORDER

**IT IS ORDERED that** Plaintiff's Motion for Spoliation Remedies (Dkt. 29) is **DENIED**.



DATED: January 21, 2025

B. Lynn Winmill
U.S. District Court Judge