UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AVALON HARDY<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL KISH, TROY DEBIE, KYLE CARD, and STEVEN McCLAIN, in their individual capacities, and JOHN/JANE DOES 1-10, other law enforcement officers whose true names are unknown, in their individual capacities,<br><br>        Defendants. | Case No. 1:23-cv-00306-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court is the defendants' motion for summary judgment (Dkt. 27). For the reasons described below, the Court will grant the motion in part and deny the motion in part. More specifically, it will grant the motion as to all claims against Trooper McClain and Trooper Card. It will also grant the motion as to Counts I, II, V, and VI against Sergeant DeBie and as to Count II against Lieutenant Kish. It will, however, deny the motion as to Counts I, III, IV, V, and VI against Lieutenant Kish and Counts III and IV against Sergeant DeBie.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On June 28, 2022, Ms. Hardy was one of many protestors gathered on the steps of the Idaho State Capitol following the release of the Supreme Court's decision in *Dobbs v. Jackson Women's Health* overruling *Roe v. Wade*. *Def. Statement of Facts* at ¶ 1, Dkt. 27-1. An anti-abortion group had organized a protest in support of the decision, while others, including Ms. Hardy, organized in support of abortion rights and against the Supreme Court's opinion in *Dobbs*. *Id.* at ¶ 2. The atmosphere during the protest was tense with protesters and counter-protesters arguing and yelling at each other while law enforcement tried to keep them separate. *See* Defs. Exs. G & H, Dkt. 27-3.

Unsurprisingly, there was significant state and local law enforcement presence at the protest. Corporal Ketchum "was in charge" the day of the protest—at least on behalf of Idaho State Police. *Ketchum Dep.* at 14:21–15:13, Dkt. 29-17. He was stationed at the Boise Police Department's command center or "command post," which was set up several blocks from the Capitol. *Id.* at 14:25–15:5; 19:2–11. Corporal Ketchum watched the entire event by video stream from a camera at the command post. *Id.* 14:25–15: 13. Other officers, however, were on the ground, including Lieutenant Kish. *Kish Dep.* at 101:2 –102:1, Dkt. 29-10.

At one point during the protest, Ms. Hardy and a woman named Cin Alonso,

an anti-abortion protestor, began arguing with one another. Def. Ex. G at 7:50, Dkt. 27-3. Lieutenant Kish stepped in between the two women to separate them, and he and Ms. Hardy collided. *Id.* at 7:50–7:53. Lieutenant Kish had a conversation with Ms. Hardy and another protester, before Ms. Hardy and Lieutenant Kish again made some kind of contact as she attempted to move through the crowd. *Id.* at 7:55–8:30. Nothing more came of this interaction immediately after it occurred.

Sometime later, however, Corporal Ketchum called Lieutenant Kish to tell him that they planned to arrest Ms. Hardy and that Lieutenant Kish was the victim. *Kish Dep.* at 135:12–25, Dkt. 29-10. Corporal Ketchum had watched the interaction between Ms. Hardy and Lieutenant Kish and ordered her arrest for battery on a peace officer. *Ketchum Dep.* at 30:8–13, Dkt. 29-17. A dispatcher then called that order over the radio and Troopers McClain and Card arrested Ms. Hardy. *Id.* The Troopers placed Ms. Hardy in handcuffs and took her to a waiting Boise police car that transported her to Ada County Jail. *Geffon Affidavit*, Dkt. 27-4.

Following the arrest, Corporal Ketchum assigned Sergeant DeBie, another Officer on the ground that day, to prepare the probable cause affidavit and the police report. *DeBie Dep.* at 16:1–9, Dkt. 29-13. Sergeant DeBie did not witness the interaction between Ms. Hardy and Lieutenant Kish firsthand and relied on his

conversation with Lieutenant Kish to draft the affidavit and report. *Id.* at 6:12 –25. Although Sergeant DeBie ultimately requested the video from the camera at the command post, by the time he did, the footage from the protest had been automatically overwritten. *DeBie Dep.* at 19:10–14, Dkt. 29-13; *Cunha Decl*., Dkt. 29-20 (describing 30-day retention policy). Accordingly, Sergeant DeBie did not review the video footage Corporal Ketchum relied on when ordering Ms. Hardy's arrest. *DeBie Dep.* at 19:10–14, Dkt. 29-13. The report and probable cause affidavit stated that Ms. Hardy "repeatedly shoved" Lieutenant Kish and "continued to shove him with her hands and chest." Def. Ex. I, Dkt. 27-3 (probable cause affidavit); Pl.'s Ex. 12, Dkt. 29-12 (police report). Lieutenant Kish approved the report, which was provided to the prosecutor. *Kish Dep*. at 126:19-21, Dkt. 29-10.

Following her arrest, Ms. Hardy was tried for simple battery, a lesser offense to the battery on an officer that she was initially charged with and arrested for. At trial, the state court judge—after hearing the state's case—dismissed the charges against Ms. Hardy for lack of sufficient evidence. Pl.'s Ex. 9, Dkt. 29-9. Ms. Hardy filed the present action in June 2023 alleging several claims against four defendants—Lieutenant Kish, Sergeant DeBie, Trooper Card, and Trooper McClain. *Complaint*, Dkt. 1. After a few months of discovery, Ms. Hardy amended

her complaint to add Corporal Ketchum as a defendant. *Am. Complaint*, Dkt. 18. Subsequently, Ms. Hardy accepted Corporal Ketchum's offer of judgment and the Court entered a partial judgment for the claims against Corporal Ketchum. Dkts. 22, 23. The remaining four defendants now move for summary judgment on all of Ms. Hardy's claims. Ms. Hardy opposes the motion.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact—a fact "that may affect the outcome of the case." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In evaluating whether the moving party has met this burden, the Court must view the evidence in the light most favorable to the non-moving party and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).

Once the moving party has met its burden, the non-moving party carries the burden to present evidence showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323. The non-moving party must go beyond the pleadings and show through "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Id.* at 324.

## ANALYSIS

The defendants move for summary judgment on all claims against all defendants. Ms. Hardy alleges claims for unlawful arrest, retaliatory arrest, excessive force, reckless or deliberate suppression of evidence, deliberate fabrication of evidence, and malicious prosecution against each defendant. The Court will address each claim in turn.

### A.    Wrongful Arrest

Ms. Hardy's claims all four defendants are liable for wrongful arrest because

there was no probable cause to arrest her for any wrongdoing. The Fourth

Amendment protects "[t]he right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures. . ." U.S.

CONST. AMEND. IV. "An arrest without probable cause violates the Fourth

Amendment and gives rise to a claim for damages under § 1983." *Rosenbaum v.*

*Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011) (quoting *Borunda v.*

*Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988)). "[T]he factual matters underlying

the judgment of reasonableness generally mean that probable cause is a question

for the jury and summary judgment is appropriate only if no reasonable jury could

find that the officers did [not] . . . have probable cause to arrest." *McKenzie v.*

*Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984). (internal citations omitted). The Court

will first address whether probable cause existed before turning to the specific

allegations against each officer.

### 1.  Probable Cause

At the outset, the first question is whether Corporal Ketchum had probable

cause to order Ms. Hardy's arrest. While Corporal Ketchum is no longer a

defendant in this case, the existence, or lack, of probable cause impacts the liability

of other officers. When he ordered Ms. Hardy's arrest, Corporal Ketchum was not

at the protest; instead, he was watching a livestream from several blocks away. The

recording of the protest was not preserved, which makes it difficult to truly know what Corporal Ketchum saw when he ordered Ms. Hardy's arrest. Nonetheless, the defendants' have submitted two videos that capture—at least to some degree—the interaction between Ms. Hardy and Lieutenant Kish. *See* Defs. Exs. G, H, Dkt. 27-3. The defendants have also submitted an affidavit from Corporal Ketchum describing what he saw. *Ketchum Decl.*, Dkt. 27-10.

"An officer has probable cause to make a warrantless arrest when the facts and circumstances within his knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime" or was committing a crime. *Rosenbaum*, 663 F.3d at 1076. To make this determination, the Court "examine[s] the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *O'Doan v. Sanford*, 991 F.3d 1027, 1039 (9th Cir. 2021). That said, "probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest." *United States v. Struckman*, 603 F.3d 731, 741 (9th Cir. 2010).

Here, the defendants claim that, as a matter of law, they had probable cause to arrest Ms. Hardy for: (1) felony battery on a peace officer, pursuant to Idaho

Code § 18-915(3); (2) simple battery, pursuant to Idaho Code § 18-903; and (3) disturbing the peace, pursuant to Idaho Code § 18-6409. The Court will address each claim in turn.

*a.* Battery

Battery on an officer requires the willful use of force or violence "while the victim is engaged in the performance of his duties and the person committing the offense knows or reasonably should know the victim is a peace officer." Idaho Code § 18-915(3). The videos of the protest show Ms. Hardy and Lieutenant Kish seemingly colliding. There is certainly some sort of contact, but the nature of that contact is not clear even from the videos. Whether that contact was willful or amounted to the use of force or violence is not at all clear. Accordingly, a reasonable jury could conclude, based on the video, that no probable cause existed to arrest Ms. Hardy for battery on a peace officer.

The same is true with respect to the defendants' argument that probable cause existed to arrest Ms. Hardy based on simple battery. Idaho Code § 18-903 defines a battery as "any: (a) Willful and unlawful use of force or violence upon the person of another; or (b) Actual, intentional and unlawful touching or striking of another person against the will of the other. . ." Again, the videos are far from clear in showing that Ms. Hardy did anything that would meet this statutory

definition. A reasonable jury could watch the videos submitted by the defendants and conclude that no probable cause existed—that Ms. Hardy and Lieutenant Kish accidentally collided in the middle of a crowd.

> *b.* Disturbing the Peace

The defendants argue that even if probable cause did not exist to arrest Ms. Hardy for battery, it existed to arrest her for disturbing the peace. Idaho Code § 18-6409(1) provides:

> Every person who maliciously and willfully disturbs the peace or quiet of any neighborhood, family or person, by loud or unusual noise, or by tumultuous or offensive conduct, or by threatening, traducing, quarreling, challenging to fight or fighting, or fires any gun or pistol, or uses any vulgar, profane or indecent language within the presence or hearing of children, in a loud and boisterous manner, is guilty of a misdemeanor.

Ms. Hardy emphasizes that Corporal Ketchum was watching the protest through a silent video stream from several blocks away. He could not hear her and, therefore, could not have possibly had probable cause to arrest her for disturbing the peace.

The Idaho Supreme Court has provided a detailed interpretation of the meaning of each phrase of this statute. *See State v. Poe*, 88 P.3d 704 (Idaho 2003). Relevant here are the provisions of the statute that prohibit disturbing the peace and quiet by engaging in "quarrelling" or "challenging to fight." As defined by the Idaho Supreme Court:

> The word "quarreling" means engaging in an 'angry dispute or altercation.

> By prohibiting disturbing the peace by quarreling, the statute is not concerned with the content of what is said. Rather the statute prohibits engaging in an angry dispute in such a manner that the participants' voice maliciously and willfully disturb the peace of quiet of any neighborhood, family, or person. . . The phrase "challenging to fight" is usually construed to mean inviting someone face-to-face to engage immediately in physical combat. Challenging to fight is not limited to expressly inviting the addressee to fight, however, but also includes attempting to incite the addressee to fight by the use of "fighting words."

*Poe*, 88 P.3d at 715. The defendants claim that, even without hearing what Ms. Hardy said, Corporal Ketchum had probable cause to arrest Ms. Hardy based on her behavior at the protest. In support of this argument, they point to the videos from the protest that show Ms. Hardy arguing with Cin Alonso. Importantly, those videos are not the same video Corporal Ketchum relied on to determine whether probable cause existed. That video was not preserved. The question of probable cause then, is not as straightforward as the defendants' claim. While the videos provide some evidence of what Corporal Ketchum saw, that is not enough to conclude, as a matter of law, that probable cause existed.

Indeed, a fact-finder evaluating this question would need to weigh the evidence before it to determine whether Corporal Ketchum had probable cause. This consideration requires weighing and assessing the credibility of Corporal Ketchum's testimony that he saw Ms. Hardy "challenging another woman to fight." *Ketchum Decl.* at ¶ 6, Dkt. 27-10. The Court, at summary judgment, is not

to make such credibility findings. *See Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017). Accordingly, taking the evidence in the light most favorable to Ms. Hardy, there is a dispute as to whether Corporal Ketchum had probable cause to arrest her for disturbing the peace and the Court cannot conclude that, as a matter of law, probable cause existed to arrest Ms. Hardy.

### 2.  Lieutenant Kish

Turning now to the wrongful arrest claim against each defendant, beginning with Lieutenant Kish. Ms. Hardy alleges Lieutenant Kish can be held liable for wrongful arrest as a supervisor or an integral participant. To be considered an integral participant, the officer's actions do not "'themselves [need to] rise to the level of a constitutional violation,' but the official must be more than a 'mere bystander.'" *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 942 (9th Cir. 2020) (quoting *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011)). More specifically, the Ninth Circuit has recognized this liability in two situations:

> [T]hose in which (1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or (2) the defendant "set[s] in motion a series of acts by others which [the defendant] knows or reasonably should know would cause others to inflict the constitutional injury."

*Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)).

Lieutenant Kish's conduct must be judged under the first category of conduct. Ms. Hardy claims Lieutenant Kish knew there was no probable cause to arrest her yet acquiesced in the arrest by failing to stop it. Lieutenant Kish testified that Corporal Ketchum called him before ordering Ms. Hardy's arrest. *Kish Dep.* at 135:1–136:7, Dkt. 29-10. Corporal Ketchum told Lieutenant Kish that he was going to order Ms. Hardy's arrest, and that Lieutenant Kish was the victim. *Id.* Lieutenant Kish's only response was to say okay. *Id.* While there was some suggestion at the hearing that Lieutenant Kish did not know of Ms. Hardy's arrest until it had already occurred, the deposition testimony suggests the opposite. Lieutenant Kish stated that Corporal Ketchum told him "[w]e're going to arrest that girl." *Id.* The use of future tense indicates that Lieutenant Kish knew of the arrest before it happened. A reasonable jury could conclude that Lieutenant Kish was an integral participant because he "was aware of the decision to [arrest Ms. Hardy and] did not object to it." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). As such, the motion for summary judgment is denied as to the wrongful arrest claim against Lieutenant Kish.

### 3. Troopers McClain and Card

Ms. Hardy also claims Troopers McClain and Card—the arresting officers—are liable for wrongful arrest. "The accepted practice of modern law enforcement is

that an officer often makes arrests at the direction of another law enforcement officer even though the arresting officer himself lacks actual, personal knowledge of the facts supporting probable cause." *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005). In these situations, the arresting officers will not be liable for wrongful arrest so long as the officers had a reasonable, good faith belief that the order was lawful even if there was no probable cause to arrest the individual. *See United States v. Robinson*, 536 F.2d 1298, 1300 (9th Cir. 1976) ("A facially valid direction from one officer to another to stop a person in a vehicle insulates that complying officer from assuming personal responsibility or liability his act done in obedience or at the direction."); *Torres v. City of L.A.*, 548 F.3d 1197, 1212 (9th Cir. 2008) (If an "officer has an objectively reasonable, good faith belief that he is acting pursuant to proper authority, he cannot be held liable if the information supplied by other officers turns out to be erroneous.").

It is undisputed that McClain and Card arrested Ms. Hardy on Corporal Ketchum's order. *Defs. Statement of Facts* at ¶ 27, Dkt. 27-1; *Plaintiff's Obj. and Responses*, Dkt. 30-1; *McClain Dep.* at 5:5–7, Dkt. 30-3 ("Q: So you arrested her because Sam Ketchum ordered you to? A: Correct."). Ms. Hardy has not alleged or pointed to any evidence indicating that either Trooper did not have a good-faith, reasonable belief that the order to arrest Ms. Hardy was valid. Accordingly,

summary judgment is granted as to the wrongful arrest claims against Troopers
McClain and Card.

### 4. Sergeant DeBie

To the extent that Ms. Hardy maintains any wrongful arrest claim against
DeBie, she has not provided sufficient evidence to support a finding of liability.
From the Court's perspective, the only possible theory to support a claim against
Sergeant DeBie is that he was an integral participant in the violation. As discussed
above, an officer may be an integral participant either where "(1) the defendant
knows about and acquiesces in the constitutionally defective conduct as part of a
common plan with those whose conduct constitutes the violation" or where "(2)
the defendant 'set[s] in motion a series of acts by others which [the defendant]
knows or reasonably should know would cause others to inflict the constitutional
injury.'" *Peck*, 51 F.4th at 889 (quoting *Johnson*, 588 F.2d at 743–44).

The contours of this doctrine were a point of tension during the hearing. Ms.
Hardy relied almost exclusively on the Ninth Circuit's opinion in *Reynaga
Hernandez* to support her argument that the doctrine is so expansive that it can
capture officers who fail to question their superiors or act on the order of another
officer. In *Reynaga Hernandez*, the Ninth Circuit upheld a district court's
determination that a justice of the peace was an integral participant in the

plaintiff's detention. 969 F.3d at 942. The justice of the peace had directed his staff to call the deputy to "pick up" the plaintiff because he was illegally present in the United States. *Id.* at 936. The plaintiff was later unlawfully detained by the deputy and then brought suit against both the deputy and the justice of the peace. *Id.* Applying a "but-for" test, the Ninth Circuit determined that but-for the justice of the peace's orders, the plaintiff would not have been unlawfully detained. *Id.* at 942. Indeed, it concluded that the plaintiff's "detention was. . . perhaps the only reasonable interpretation" of the defendant's request to pick him up. *Id.*

The facts here, however, are a far cry from those in *Reynaga Hernandez*. Indeed, *Reynaga Hernandez* exemplifies "the second situation" where the Ninth Circuit has found a defendant to be an integral participant—where an official sets in motion a series of acts leading to the unconstitutional act. *Peck*, 51 F.4th at 889. In contrast, the allegations against Sergeant DeBie would necessarily fall into the first category of cases, where "the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation." *Id*. Here, Sergeant DeBie saw "[Ms.] Hardy handcuffed and being placed in a Boise Police Department vehicle" and did not intervene. *DeBie Affidavit* at ¶ 4, Dkt. 27-9. *Reynaga Hernandez*, therefore, provides the Court with little guidance as to the application of the integral

participation doctrine to Sergeant DeBie.

Even looking to the first category of cases, which is arguably a better fit, it is clear Sergeant DeBie's conduct is not a basis for liability. *Boyd* exemplifies this category of liability. In *Boyd*, the Ninth Circuit held that officers who provided backup during search of a home could be held liable for unlawful use of a flash-bang device because "every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed." *Id.* at 780. The Ninth Circuit has recognized that this category of liability is "narrow." *Peck*, 51 F.4th at 889.

Sergeant DeBie seems to be no more than a bystander to Ms. Hardy's arrest. He was not involved in conducting the arrest and there is nothing in the record indicating Sergeant DeBie was involved in ordering or planning for the arrest. He was one of many officers at the protest that day and witnessed Ms. Hardy's arrest. That is not enough to make him an integral participant. *See Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) (officer in front yard interviewing witnesses while unlawful search was carried out was not liable as integral participant to unlawful search). Accordingly, summary judgment is granted on Ms. Hardy's unlawful arrest claim against Sergeant DeBie.

**B.    Retaliatory Arrest**

In addition to her wrongful arrest claim, Ms. Hardy also argues that she was arrested in retaliation for engaging in protected speech. As a necessary first step in bringing a First Amendment retaliatory arrest claim a plaintiff "'must generally plead and prove the absence of probable cause,' because the presence of probable cause generally 'speaks to the objective reasonableness of an arrest' and suggests that the 'officer's animus' is not what caused the arrest." *Ballentine v. Tucker*, 28 F.4th 54, 62 (9th Cir. 2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 399–401 (2019)). As already discussed, the existence of probable cause is disputed. Therefore, we can move on to the core elements of a retaliation claim.  To establish her claim, Ms. Hardy must show (1) she engaged in constitutionally protected activity, (2) as a result, she was subject to adverse action by the defendant that would chill a person of ordinary firmness form continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

This claim raises many questions similar to those raised by Ms. Hardy's wrongful arrest claim, particularly as to which defendants may be held liable. For the same reasons set forth above, Troopers McClain and Card cannot be held liable for retaliatory arrest where they were following Corporal Ketchum's order and

Sergeant DeBie cannot be held liable because Ms. Hardy has not produced any evidence that he had any role in ordering or effectuating her arrest. Accordingly, the only defendant who could be held liable for retaliatory arrest is Lieutenant Kish as an integral participant.

Taking the facts in the light most favorable to Ms. Hardy, as the Court must, a reasonable jury could find her arrest was made in retaliation for her speech. First, Ms. Hardy was engaged in protected activity at the time she was arrested. Ms. Hardy, among others, was protesting in a public forum, the Capitol steps, at the time of her arrest. *Hardy Dep.* at 86:7–10, Dkt. 30-2. "Public demonstrations and protests are clearly protected by the First Amendment." *See e.g.*, *Index Newspapers v. United States Marshals Service*, 977 F.3d 817, 830 (9th Cir. 2020). The defendants argue that her conduct falls outside the scope of protected activity because "[v]iolent conduct is beyond the pale of constitutional protection." *NAACP v. Caliborne Hardware Co.*, 458 U.S. 886, 902 (1982). Indeed, if a jury concludes that Ms. Hardy pushed Lieutenant Kish, then her conduct would not be protected. Nonetheless, a reasonable jury could view the video recordings and conclude that Ms. Hardy was not engaged in violent conduct and, thus, her conduct was protected activity.

Next, Ms. Hardy argues she was subject to an adverse action that would chill

an individual of ordinary firmness when she was arrested and charged with a felony. The Ninth Circuit has recognized that an arrest "would chill a person of ordinary firmness from engaging in future First Amendment activity." *Ford v. City of Yakima*, 706 F.3d 1188, 1193–94 (9th Cir. 2013), *abrogated on other grounds by Nieves*, 587 U.S. 401. Certainly, a reasonable jury could come to the same conclusion here.

Finally, Ms. Hardy argues that there was a substantial causal relationship between her speech and her arrest. This third element "may be met with either direct or circumstantial evidence, and [the Ninth Circuit] ha[s] said that it involves questions of fact that normally should be left for trial." *Index Newspapers*, 977 F.3d at 827. To survive summary judgment, Ms. Hardy must present sufficient evidence that a jury could conclude "that the officers' desire to chill [her] speech was a but-for cause of their conduct." *Id.*

Ms. Hardy points to the fact that others were engaged in similarly disruptive conduct and were not arrested. For instance, Corporal Ketchum acknowledged that Cin Alonso, an anti-abortion protestor, was engaged in disruptive conduct that could provide probable cause for a disturbing the peace arrest. *Ketchum Dep.* at 54:9–62:16, Dkt. 29-17. Additionally, Idaho State Police had planned to be "very forgiving" at the protest and attempt to avoid arrests. *Castellanoz Dep.* at 57:15–

18, Dkt. 29-15; *ISP Dep. (Card)* at 14:11–20, Dkt. 30-4. A reasonable jury could conclude that Ms. Hardy's arrest was motivated by her speech, particularly where Cin Alonso—at the same time and place as Ms. Hardy—was engaging in comparable conduct and was not arrested. Of course, there are other possible motives that could explain the officers' conduct, however, "[t]he possibility that other inferences could be drawn [regarding the officers' motivations] that would provide an alternate explanation for [the defendants'] actions does not entitle them to summary judgment." *Ballentine*, 28 F.4th at 63 (quoting *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1303 (9th Cir. 1999)). Accordingly, summary judgment on Ms. Hardy's retaliatory arrest claim against Lieutenant Kish is denied.

### C.    Excessive Force

Ms. Hardy alleges three theories of excessive force. First, that any force, including the use of handcuffs, was not reasonable because there was no probable cause to arrest her. Second, that arresting officers fastened the handcuffs too tightly. And, finally, that the officers either hit her in the ribs or paraded her through a crowd of anti-abortion protestors who did so. None of these theories survive summary judgment.

In evaluating a Fourth Amendment claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and

circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). This inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotations omitted). "The proper application of this reasonableness test "requires careful attention to the facts and circumstances of each particular case including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Because of the fact- and circumstance-specific nature of this inquiry, the Ninth Circuit has made clear that "judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Lolli v. County of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003) (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)).

The defendants have plead qualified immunity, so the burden is on the plaintiff to prove not only "that the right was violated," but also "that the right was clearly established at the time of the conduct." *Isayeva v. Sacramento Sheriff's*

*Department*, 872 F.3d 938, 946 (9th Cir. 2017).[1] A right is clearly established if "the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it. . . meaning that existing precedent. . . placed the statutory or constitutional question beyond debate." *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (internal quotation marks and citation marks omitted).

At the outset, Ms. Hardy alleges that all defendants are liable for excessive force either directly or under the integral participant doctrine. The Court disagrees. First, as to Sergeant DeBie, Ms. Hardy has not presented any facts that would support an excessive force claim against him as an integral participant. As discussed with respect to the unlawful arrest claim, the evidence seems only to indicate that Sergeant DeBie saw Ms. Hardy placed in handcuffs. He was not involved in any other capacity. This is insufficient to support the claim that he was an integral participant. As for Lieutenant Kish, the fact that he may have

---

[1] Ms. Hardy argues that qualified immunity is contrary to the text of the Constitution. As this Court recently recognized, "[t]he history of qualified immunity is fraught; the scholarship cited is rigorous; and the district court opinion is moving and thoughtful. However, none of it is authoritative precedent for this Court. Binding law from the Supreme Court and Ninth Circuit has unambiguously recognized qualified immunity. That is the law the Court is required to rely upon." *Schuchardt v. Sousa*, --- F. Supp. 3d ---, 2024 WL 4418061, at *9 (D. Idaho Oct. 4, 2024). Accordingly, the Court will apply the qualified immunity framework as set out by the Supreme Court.

acquiesced to an arrest without probable cause by failing to intervene does not support the conclusion that he can be liable under the same theory for excessive force. He was not present at the time of Ms. Hardy's arrest and could not have known that the officers would apply the handcuffs or any other force.

Turning now to Ms. Hardy's excessive force claims against Trooper McClain and Trooper Card, the Court will address each of her theories, beginning with her claim that any force was unreasonable because no probable cause existed to arrest her. "[E]stablishing a lack of probable cause to make an arrest does not establish an excessive force claim." *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004). Even so, when an arrest is unlawful, the use of handcuffs may constitute excessive force. *See Gregoire v. California Highway Patrol*, No. 14CV1749-GPC(DHB), 2016 WL 633446, at *10 (S.D. Cal. Feb. 16, 2016). Here, however, the Troopers who applied the handcuffs had no reason to know that Ms. Hardy's arrest may have been unlawful. Rather, the Troopers were acting at the direction of a superior officer by making the arrest. Under these circumstances, the use of the normal handcuffing procedures was reasonable.

Second, it is clearly established that the use of overly tight handcuffs constitutes excessive force. *Palmer v. Sanderson*, 9 F.3d 1433, 1437 (9th Cir. 1993). The Ninth Circuit has recognized tight handcuffing claims in two situations:

"where a plaintiff claims to have been demonstrably injured by the handcuffs or where complaints about the handcuffs being too tight were ignored." *Arias v. Amador*, 61 F. Supp. 3d 960, 976 (E.D. Cal. 2014). Here, the latter situation is inapplicable. Ms. Hardy does not claim that she made any request to loosen her handcuffs and the record does not reflect any such request. Indeed, Ms. Hardy only requested that her handcuffs be tightened.

Instead, Ms. Hardy seems to be bringing a claim based on a demonstrable injury from the handcuffing.  In support of her claim of injury, Ms. Hardy relies on her testimony that the handcuffs left bruises on her wrists that were so severe she could not work. *Hardy Dep.* at 171:16–19; 176:15–17, Dkt. 30-2. She describes bruising on her left wrist that was "slightly swollen" and prevented her from working for about a week. *Id.* at 173:23–176:23. Importantly, however, Ms. Hardy also clarified that the handcuffs were too tight only after a Boise Police Officer tightened them at her request. *Id.* at 176:24–176:11. Accordingly, neither Trooper Card nor Trooper McClain applied the handcuffs too tightly. Rather, it was a Boise Police Officer, who is not a defendant in this case who applied the handcuffs too tightly. As such, summary judgment on Ms. Hardy's claim that her handcuffs were excessively tight is appropriate.

Ms. Hardy's third and final theory of excessive force is that Troopers

McClain and Card paraded Ms. Hardy through the anti-abortion crowd and allowed them to hit her or they themselves hit her. Ms. Hardy describes being hit twice, which resulted in three small circular bruises on her ribs. *Hardy Dep.* at 160:4–14, 171:1–4, Dkt. 30-2. During her deposition testimony, Ms. Hardy was unable to identify whether a protestor hit her or whether an officer hit her. *Id.* at 169:4–12 (suggesting maybe an officer hit her). Ms. Hardy further stated she did not know if the officers knew she had been hit. *Id.* at 167:14–19. Ms. Hardy's deposition testimony is the only evidence in the record supporting the claim she was hit either by an officer or a protester at the time of her arrest. Even accepting all of this testimony as true, without more, it is insufficient for a reasonable jury to conclude that Troopers McClain and Card used excessive force by allowing Ms. Hardy to be hit or by hitting her themselves. As such, the Court will grant summary judgment on all of Ms. Hardy's excessive force claims against all defendants.

> **D.** **Reckless or Deliberate Suppression of Evidence**

Ms. Hardy claims the defendants recklessly or deliberately suppressed evidence by failing disclose that the video from the protest was not preserved and by failing to disclose that Lieutenant Kish did not observe anything arrestable during his interaction with Ms. Hardy. Although the defendants move for summary

judgment on this claim, they suggest that this claim, along with Ms. Hardy's claims for deliberate fabrication of evidence and malicious prosecution, "boil down" into each other and only address the malicious prosecution claim. *Motion* at 6, Dkt. 27. The Court sees no reason why these claims would "boil down" into any other claim and will address them separately.

It is clearly established that police officers are bound to disclose material, including exculpatory or impeachment evidence. *Carrillo v. County of LA*, 798 F.3d 1210, 1213 (9th Cir. 2015). To prevail on a suppression of evidence claim, a plaintiff must show: (1) an officer suppressed evidence that was favorable to her, (2) the suppression harmed her, and (3) the officer acted with deliberate indifference to or reckless disregard of her rights or the truth. *Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018).

Ms. Hardy's suppression of evidence claim relies on the following deposition testimony from Lieutenant Kish describing the phone call he received from Corporal Ketchum informing him that he planned to arrest Ms. Hardy: "I remember him saying 'Hey, we're going to arrest that girl.' I said, 'What girl?' I didn't know who he was talking about. He said, 'We're going to arrest the girl in the black tank top that was pushing you.' I said, 'What?'" *Kish Dep.* at 135:17–23, Dkt. 29-10. Ms. Hardy argues that this evidence, that Lieutenant Kish, as the

alleged victim, did not notice anything arrestable, is favorable to her and should have been disclosed. Indeed, Lieutenant Kish's failure to notice anything arrestable, or particularly notable, about his interaction with Ms. Hardy is favorable to her.

As for the harm caused by the suppression, the trial court ultimately dismissed the charges against Ms. Hardy. That dismissal, however, does not bar Ms. Hardy's claim. *See Soo Park v. Thompson*, 851 F.3d 910, 925 (9th Cir. 2017). Rather, the relevant consideration is whether the "suppressed evidence or testimony is material." *Id.* at 926. Suppressed evidence or testimony, in this context, is material "only if it affected the question whether the defendant was deprived of a fair trial." *Id.* Here, Lieutenant Kish's reaction was material because it "tends to cast doubt on the government's case." *Id.* at 926 (citing *United States v. Leal-Del Carmen*, 697 F.3d 964, 972 (9th Cir. 2012)). If the contact was so incidental or minor that Lieutenant Kish did not notice it, and that information had been disclosed to Ms. Hardy, she might have been able to use that information to persuade the prosecutor to not file charges or drop the charges before trial. Her inability to do so satisfies the harm requirement.

Finally, deliberate indifference is a "conscious or reckless disregard of the consequence of one's acts or omissions. It entails something more than negligence

but is satisfied by something less than acts or omissions for the very purpose of causing harm or without knowledge that harm will result." *Tatum v. Moody*, 768 F.3d 806, 821 (9th Cir. 2014) (quoting *Gantt v. City of L.A.*, 717 F.3d 702, 708 (9th Cir. 2013)). Whether a defendant acted with deliberate indifference is a question of fact. *Mellen*, 900 F.3d at 1101. A reasonable jury could conclude that Lieutenant Kish was deliberately indifferent when he failed to disclose the fact that he did not notice anything arrestable during his interaction with Ms. Hardy. Accordingly, the motion for summary judgment is denied as to the claim against Lieutenant Kish.

That said, the Court will grant the motion with respect to the claims against all other officers. For one, the only other officer Ms. Hardy mentions in her briefing on this claim is Sergeant DeBie. Ms. Hardy claims that the fact that Idaho State Police failed to preserve the video on which Ms. Hardy's arrest was based is exculpatory or impeachment evidence that should have been included in the police report and probable cause affidavit. However, Ms. Hardy does not explain how this evidence is exculpatory or impeachment evidence, and it is not clear how this fact would tie into any issue at trial or serve as impeachment. *See* Pl.'s Ex. 7, Dkt. 29-9. Summary judgment, therefore, is granted as to Ms. Hardy's reckless or deliberate suppression of evidence claim against Sergeant DeBie, Trooper McClain and Trooper Card.

### E.  Deliberate Fabrication of Evidence

Ms. Hardy alleges the defendants deliberately fabricated evidence by making false statements in the police report and probable cause affidavit. Based on the allegations, the only possible defendants who may be held liable for such fabrication are Sergeant DeBie, who drafted the report and affidavit, and Lieutenant Kish, who approved the report.

There is a clearly established right not to be subject to criminal charges on the basis of deliberately fabricated evidence. *Caldwell v. City & County of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018).  To prevail on a deliberate fabrication claim, a plaintiff must prove:

> (1) that the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty. To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question.

*Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). This claim may be supported by direct or circumstantial evidence. *Caldwell*, 889 F.3d at 1112. "Deliberate fabrication, [however], must mean something more than a mere omission." *O'Doan*, 991 F.3d at 1045.

When the claim is supported by circumstantial evidence alone, "the plaintiff

'must, *at a minimum*, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [the plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known those techniques would yield false information.'" *O'Doan*, 991 F.3d at 1045 (quoting *Devereaux*, 263 F.3d at 1076). Deliberate fabrication may also be shown by direct evidence. "[F]or example, when 'an interviewer. . . deliberately mischaracterizes witness statements in her investigative report.'" *Spencer*, 857 F.3d at 793 (quoting *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010)). That said, "not all inaccuracies give rise to a constitutional claim." *Id.* at 798. "Carelessness," "mistake of tone," and "errors concerning trivial matters," are insufficient to give rise to a claim. *Id.*

Ms. Hardy's deliberate fabrication claim is based on the statements in the police report and probable cause affidavit that Ms. Hardy "repeatedly shoved" Lieutenant Kish and "continued to shove him with her hands and chest." Def. Ex. I, Dkt. 27-3 (probable cause affidavit); Pl.'s Ex. 12, Dkt. 29-12 (police report). The defendants suggest any inaccuracy amounts to no more than carelessness, which does not give rise to a deliberate fabrication claim. This argument relies heavily on *Gausvik v. Perez*, where the Ninth Circuit held that errors in a probable cause

affidavit were insufficient to establish deliberate fabrication. 345 F.3d 813, 817 (9th Cir. 2003). The affidavit inaccurately stated that three children tested "positive" for sexual abuse when the tests were "suggestive" of or "consistent" with abuse and indicated that eight children accused the suspect when only two children had. *Id.* That said, in a more recent case, the Ninth Circuit held that inaccuracies in a police report that the plaintiff was "present for a shooting and w[as] with the suspects dealing drugs" did create a triable issue when the plaintiff had told the officer he was at his uncle's house down the street from the shooting. *Caldwell*, 889 F.3d at 1112. The Court found "the potential 'errors' [were] not obviously the product of carelessness and that there is a triable issue." *Id.*

Ms. Hardy's allegations of fabrication fall between these two cases. The police report and affidavit do not clearly misquote a witness as in *Caldwell*. By the same token, the statements cannot necessarily be deemed simple carelessness as in *Gausvik* because there is a factual dispute about what actually occurred between Ms. Hardy and Lieutenant Kish. Officer DeBie described the altercation in the report between Ms. Hardy and Lieutenant Kish even though he did not witness it firsthand, and Lieutenant Kish approved that description. *DeBie Dep.* at 6:12 –13, Dkt. 29-13. Reviewing the evidence in the light most favorable to the plaintiff, the Court cannot conclude that these inaccuracies were simply the product of

carelessness.

Indeed, a jury could also conclude that the false statements were the but-for and proximate cause of Ms. Hardy's injury—her continued prosecution for battery. *Spencer*, 857 F.3d at 798. The prosecutor relied on the police report when deciding to charge her for battery. *Kish Dep.*, Dkt. 29-10 at 126:19-21. A reasonable jury could conclude that had the police report accurately reflected the interaction between Ms. Hardy and Lieutenant Kish, she would not have been so charged. *See e.g.*, *Toland v. McFarland*, No. 2:21-cv-04797-FWS-AGR, 2023 WL 8884397, at * 21 (C.D. Cal. Sept. 18, 2023) (finding triable issue where police report described altercation between plaintiff); *Flores v. City of Pasadena*, No. 18-cv-03792 DDP (JCx), 2019 WL 5102465, at *8 (C.D. Cal. Oct. 10, 2019) ("The above statements in the police report are not based on Officer Butler's 'inferences' as Defendants argue, rather, they are statements which can be objectively verified by a jury."). Accordingly, the motion for summary judgment is denied as to Lieutenant Kish and Sergeant DeBie, but granted as to Troopers McClain and Card.

## F.    Malicious Prosecution

Ms. Hardy alleges a malicious prosecution claim against Sergeant DeBie and

Lieutenant Kish.[2] Both defendants were directly involved in the preparation of the police report and the probable cause affidavit—Sergeant DeBie as the drafter and Lieutenant Kish as the approver. *Kish Dep.*, Dkt. 29-10 at 126:15-19; 131:7–10; *see also* Def. Ex. I, Dkt. 27-3 (probable cause affidavit); Pl.'s Ex. 12, Dkt. 29-12 (police report).

"In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [her] with malice and without probable cause, and that they did so for the purpose of denying [her] equal protection or another specific constitutional right.'" *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)). "Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." *Id.*

---

[2] To the extent Ms. Hardy maintains a malicious prosecution claim against either Trooper McClain or Trooper Card, the Court grants the motion as to those claims. She has not indicated that the Troopers were involved in her prosecution. Further, the fact that Troopers McClain and Card arrested Ms. Hardy is not enough to make them integral participants in any violation. The Ninth Circuit has clarified that "contributing to or facilitating a constitutional violation requires more than simply but-for causation, which is an extraordinarily expansive concept." *Peck*, 51 F.4th at 890. Moreover, even to the extent the Troopers act of arresting Ms. Hardy "set in motion a series of acts by others," they did not "kn[o]w or reasonably should have known could cause others to inflict the constitutional injury." *Peck*, 51 F.4th at 891. It is simply not foreseeable, in this situation, that arresting Ms. Hardy at the direction of another officer would lead to malicious prosecution.

**MEMORANDUM DECISION AND ORDER - 34**

Where, as here, the claim is brought against a police officer rather than a prosecutor, there is a rebuttable presumption that the prosecutor exercises independent judgment in deciding to file criminal charges. *Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir. 2008). This independent judgment breaks "the chain of causation between an arrest and prosecution" and immunizes the investigating officers from liability for the injuries suffered after the charging decision. *Id*. This presumption may be rebutted if the plaintiff shows that the independence of the prosecutor's judgment has been compromised. *Id.* For instance, this presumption may be rebutted where the prosecutor "relied on the police investigation and arrest report when he filed the complaint, instead of making an independent cause for arrest." *Smiddy v. Varney*, 665 F.2d 261, 266–67 (9th Cir. 1981), *overruled in part on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006). To survive summary judgment, then, a plaintiff must present information that provides ample evidence from which a reasonable jury could conclude the arresting officers, through false statements and material omissions in their reports, prevented the prosecutor from exercising judgment." *Barlow v. Ground*, 943 F.2d 1132, 1137 (9th Cir. 1991).

Ms. Hardy claims that the defendants made false statements in the police report and probable cause affidavit and concealed exculpatory evidence. At the outset, Lieutenant Kish confirmed that the prosecutor relied on the police report to

prosecute Ms. Hardy. *Kish Dep*., Dkt. 29-10 at 126:19-21. That police report and the probable cause affidavit stated that Ms. Hardy "repeatedly shoved" Lieutenant Kish and "continued to shove him with her hands and chest." Def. Ex. I, Dkt. 27-3 (probable cause affidavit); Pl.'s Ex. 12, Dkt. 29-12 (police report). The defendants claim these statements are not materially false because Ms. Hardy did in fact push Lieutenant Kish, which is a battery. In support of this claim, the defendants point to the video footage of the interaction between Ms. Hardy and Lieutenant Kish. The Court has already determined that this footage is not as clear as the defendants claim it to be. A reasonable jury could conclude that any contact was incidental or even instigated by Lieutenant Kish. It follows that a reasonable jury could also conclude that the statements contained in the police report were false and interfered with the prosecutor's independent judgment. *See Blankenhorn v. City of Orange*, 485 F.3d, 463, 483 (9th Cir. 2007).

Additionally, neither Lieutenant Kish nor Sergeant DeBie is entitled to qualified immunity as to the malicious prosecution claim. As already discussed, a material dispute exists as to whether a constitutional violation occurred and there is a clearly established right not to be subject to criminal charges on the basis of deliberately fabricated evidence. *Caldwell*, 889 F.3d at 1112. Accordingly, summary judgment is denied as to Ms. Hardy's malicious prosecution claim

against Sergeant DeBie and Lieutenant Kish.

**ORDER**

**IT IS ORDERED that:**

1.      Defendant's Motion for Summary Judgment (Dkt. 27) is **GRANTED IN PART and DENIED IN PART.**

2.      Summary judgment is granted as to all counts against Trooper McClain and Trooper Card as well as to Counts I, II, V, and VI against Sergeant DeBie and Count II against Lieutenant Kish.

3.      Summary judgment is denied as to Counts I, III, IV, V, and VI against Lieutenant Kish and Counts III and IV against Sergeant DeBie.

DATED: January 21, 2025

B. Lynn Winmill
U.S. District Court Judge