UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AVALON HARDY,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL KISH, TROY DEBIE, KYLE CARD, and STEVEN McCLAIN, in their individual capacities, and JOHN/JANE DOES 1-10, other law enforcement officers whose true names are unknown, in their individual capacities,<br><br>Defendants. | Case No. 1:23-cv-00306-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court are the parties' *Daubert* motions. Dkts. 43, 45. For the

reasons set forth below, the Court will deny the defendants' motion and grant in

part and deny in part Ms. Hardy's motion.

**BACKGROUND**

The facts of this case are set forth in more detail in the Court's previous

Memorandum Decision and Order. *See* Dkt. 39. In short, this case arises from

Avalon Hardy's arrest in June 2022 at a protest at the Idaho State Capitol. Corporal

Ketchum, an Idaho State Police Officer, was watching the protest through a

livestream and ordered Ms. Hardy's arrest for battery on a police officer after

watching an interaction between her and Lieutenant Kish. Troopers McClain and

Card carried out the arrest and Sergeant DeBie prepared the probable cause

affidavit and police report following the arrest. In June 2023, Ms. Hardy filed this

action alleging claims against all defendants for wrongful arrest, retaliatory arrest,

excessive force, reckless or deliberate suppression of evidence, deliberate

fabrication of evidence and malicious prosecution. Dkt. 18. The defendants moved

for summary judgment and the Court granted the motion in part, reducing the

number of defendants and narrowing the issues for trial. Dkt. 39. Trial is set for

August 25, 2025 and both parties now move to exclude the other party's expert

testimony.

## LEGAL STANDARD

Federal Rule of Evidence 702 controls the admissibility of expert testimony.

Fed. R. Evid. 702. Under this rule, a witness "who is qualified as an expert by

knowledge, skill, experience, training, or education may testify in the form of

opinion or otherwise" provided that:

(a) the expert's scientific, technical, or other specialized knowledge will help
the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and

**MEMORANDUM DECISION AND ORDER - 2**

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In other words, to be admissible an expert's testimony must "rest on a reliable foundation and [be] relevant to the task at hand." *Hyer v. City and Ctny of Honolulu*, 118 F.4th 1044, 1055 (9th Cir. 2024) (quoting *Elosu v. Middlefork Ranch Inc*, 26 F.4th 1017, 1024 (9th Cir. 2022)). Expert testimony is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (citing Fed. R. Evid. 702(a)). The reliability inquiry is fact-specific and depends "on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (internal citations omitted).

To guide this reliability analysis, the Supreme Court has outlined several factors to use in determining whether expert testimony is reliable. *Daubert*, 509 U.S. at 592–94. These factors include "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory of technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000). Ultimately, the Rule

702 inquiry is a "flexible" one, and district courts have broad discretion. *Daubert*,

509 U.S. at 594; *Kumho*, 526 U.S. at 142.

## ANALYSIS

Both parties move to exclude the other party's expert from testifying at trial.

The Court will take these motions one at a time, beginning with the defendants'

motion.

### A.    The Defendants' Motion

Ms. Hardy's expert, Victor McGraw, offers two opinions. First, he opines

that the defendants' actions "selectively deprived [Ms.] Hardy of her continued

lawful presence. . . and her exercise of her First Amendment Rights." Def. Ex. A,

Dkt. 42-2. Second, he opines that the defendants' actions "served to deprive [Ms.]

Hardy of her freedom from detainment, arrest, and prosecution based on false

allegations of criminal behavior." *Id.* The defendants seek to exclude both

opinions.

### 1.  Opinions on the First Amendment

Turning first to Mr. McCraw's testimony regarding the First Amendment.

The defendants make several arguments for the exclusion of this testimony,

including that Mr. McCraw is not qualified, his testimony will not assist the trier of

fact, it is not the product of reliable principles or method, and it improperly opines

on the defendants' states of mind. The Court will consider each argument in turn.

### a. Qualifications

First, the defendants argue that Mr. McCraw is not qualified to testify as an expert. A witness has the appropriate qualifications to testify as an expert when they have "some special knowledge, skill, experience, training or education" on the subject matter. *Hankey*, 203 F.3d at 1168. Mr. McCraw meets this threshold. He served as a law enforcement officer for over thirty years, served as the executive director of the Idaho Peace Officer Standards and Training (POST) program, and now is a consultant specializing in public safety. Pl.'s Ex. A, Dkt. 44-1. Beyond a single conclusory sentence, the defendants do not explain why they believe Mr. McCraw is not qualified and it is plain from a review of his CV that he is qualified to opine of police practices based upon his experience and training. *See e.g., Fair v. King County*, No. 2:21-cv-01706-JHC, 2025 WL 1031274, at *14 (W.D. Wash. Apr. 7, 2025).

### b. Assist the Trier of Fact

Next, the defendants argue Mr. McCraw's testimony will not assist the trier of fact. "Whether testimony is helpful within the meaning of Rule 702 is in essence a relevancy inquiry." *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1184 (9th Cir. 2002). To be relevant, the testimony must logically advance a material aspect of

the party's case. Fed. R. Evid. 401, 402; *Daubert*, 43 F.3d at 1315.

Here, Mr. McCraw's testimony relates to Ms. Hardy's First Amendment retaliation claim. To prove that claim she must show, among other things, that there was a substantial causal relationship between a constitutionally protected activity and an adverse action. *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). Mr. McCraw's testimony materially advances Ms. Hardy's case by demonstrating that, consistent with best practices, the officers did not need to arrest her. Moreover, expert testimony may also "assist[] the trier of fact when it provides information beyond the common knowledge of the trier of fact." *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002). Mr. McCraw's testimony, therefore, is helpful to the jury to explain "the options available to officers in similar situations." *Hyer*, 118 F.4th at 1057.

### c.  Reliable Principles and Methods

The defendants also argue Mr. McCraw's testimony is not based on reliable principles and methods. Rule 702 requires that an expert's opinions be "based on sufficient facts or data" and must also "be the product of reliable principles and methods." Fed. R. Evid. 702. "[T]he trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the case." *Primiano v. Cook*, 598 F.3d 558, 564 (9th

**MEMORANDUM DECISION AND ORDER - 6**

Cir. 2010).

The defendants' argument that Mr. McCraw does not apply any principle or method ignores that in some cases "the relevant reliability concerns may focus upon personal knowledge or experience," not principles or methodologies. *Kumho*, 526 U.S. at 150. In such cases, "[t]he *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert rather than the methodology or theory behind it." *Hankey*, 203 F.3d at 1169.

The Court is satisfied that Mr. McCraw's testimony is sufficiently reliable. "An expert's specialized knowledge and experience can serve as the requisite facts or data on which they render an opinion." *Elosu*, 26 F.4th at 1024 (internal quotation marks omitted). Indeed, in some fields "experience is the predominant, if not sole, basis for a great deal of reliable testimony." Fed. R. Evid. 702 advisory committee's notes to 2000 amendments. That is the case here. Mr. McCraw reviewed the case materials and applied his knowledge, experience, and training to provide an assessment of the officers' conduct. This methodology is sufficiently reliable. *See e.g.*, *Briggs v. Yi*, 760 F. Supp. 3d 874, 899 (D. Alaska 2024).

### *d.* Opinion on Defendants' State of Mind

Finally, the defendants argue that Mr. McCraw impermissibly opines on the

defendants' states of mind. "Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." *Siring v. Or. State Bd. Educ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013). Here, the defendants insist Mr. McCraw "claims that Plaintiff was arrested because of what position she was taking at the event." *Def. Motion* at 8, Dkt. 43-1. It is unclear, however, where in the report this claim is made. The defendants do not cite to any specific section of the report nor does the Court find such an opinion in its own review of the report.

Certainly, Mr. McCraw's opinions, along with the other evidence presented at trial, may support the *inference* that Ms. Hardy was arrested based on her views, but his opinion does not go so far as to actually opine on the officers' state of mind. *See e.g. Mellen v. Winn*, 900 F.3d 1085, 1104 (9th Cir. 2018) (plaintiff offered a police practices expert declaration "as circumstantial evidence of [the defendant]'s state of mind and to show that [the defendant]'s failure to disclose [a witness]'s statement deviated far from the norm of what would be expected of a reasonable police officer in [the defendant]'s position."). Moreover, Mr. McCraw's testimony "is not rooted in psychological analysis or an improper investigation [of the officer's state of mind]. Rather, [his] testimony is based on the facts presented, analyzed through the lens of his experience and knowledge as an expert in standards and training for . . . police officers." *Qualey v. Pierce County*, No. 3:23-

cv-05679-TMC, 2025 WL 254810, at * 9 (W.D. Wash. Jan. 21, 2025). Accordingly, the Court will deny the defendants' motion as to Mr. McCraw's First Amendment opinions.

### 2. Opinions on the Fourth Amendment

Turning next to the defendants' argument that Mr. McCraw's testimony regarding the Fourth Amendment should be excluded. They claim he was not hired to offer an opinion on the applicability of the Fourth Amendment to Ms. Hardy's case and may not now do so. Mr. McCraw's testimony reflects the same understanding that he was not hired to offer an opinion on the Fourth Amendment and, more importantly, does not offer such an opinion. Def. Ex. B at 50:10–22, Dkt. 43-2.

The defendants nonetheless argue that Mr. McCraw necessarily opines on the applicability of the Fourth Amendment by concluding that "the defendants' . . . actions . . . served to deprive Avalon Hardy of her freedom from detainment, arrest, and prosecution." Def. Ex. A, Dkt. 43-2. The unspoken inference of the defendants' argument is that this statement concludes that Ms. Hardy's Fourth Amendment rights were violated because law enforcement lacked probable cause to arrest her.

After reviewing Mr. McCraw's expert report, the Court is not convinced that

Mr. McCraw is offering an opinion on the applicability of the Fourth Amendment. That his testimony may ultimately support a fact finder's conclusion that Ms. Hardy's Fourth Amendment rights were violated, does not require a different conclusion. Accordingly, the fact that Mr. McCraw was not hired to offer an opinion on the Fourth Amendment does not warrant exclusion of his testimony and the defendants' motion is denied.

### B.    Ms. Hardy's Motion

The defendants' expert, R. Scot Haug, offers several opinions, all of which Ms. Hardy argues should be excluded at trial. The Court will begin by addressing Ms. Hardy's arguments as to Mr. Haug's excessive force and collective knowledge opinions before turning to his opinions on Ms. Hardy's criminal conduct as well as her malicious prosecution and deliberate fabrication claims. Lastly, the Court will address Mr. Haug's opinions on plainclothes officers.

### 1.  Excessive Force and Collective Knowledge Opinions

Mr. Haug's testimony includes several opinions concerning excessive force and the collective knowledge doctrine, neither of which are relevant to the remaining claims. To be relevant, the testimony must logically advance a material aspect of the party's case. Fed. R. Evid. 401, 402. Where, as here, the testimony relates to issues that have been resolved, it is plainly not relevant.

MEMORANDUM DECISION AND ORDER - 10

First, the Court granted summary judgment in favor of the defendants on Ms. Hardy's excessive force claim, meaning it is no longer at issue. Ms. Hardy only briefly addresses these opinions in her conclusion, but the Court agrees that those opinions should be excluded as irrelevant.

Second, Mr. Haug opines that the collective knowledge doctrine applies and insulates Troopers Card and McClain from liability for arresting Ms. Hardy. *See* Pl. Ex. A at 19–21, Dkt. 45-3. The Court already granted summary judgment on the wrongful arrest claim against Troopers Card and McClain, so the applicability of this doctrine is no longer at issue. The only remaining wrongful arrest claim is against Lieutenant Kish and Mr. Haug's collective knowledge opinions do not discuss Lieutenant Kish's actions.

Even to the extent Mr. Haug's collective knowledge opinions are relevant, they are inadmissible as they plainly attempt to instruct the jury on the law. It is well established that "the judge instructs the jury on the law" and experts "do not testify about the law." *United States v. Brodie*, 858 F.2d 492, 497 (9th Cir. 1988) *overruled on other grounds by United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997). Here, Mr. Haug's opinion, as set forth in paragraph c, simply explains what the collective knowledge doctrine is, how it applies, and concludes that it applies here. More specifically, it provides:

**MEMORANDUM DECISION AND ORDER - 11**

In certain situations, a police officer may be directed by a colleague and/or supervisor to make an arrest for a crime that the officer did not personally observe. The collective knowledge doctrine permits a police officer to stop, search or arrest a suspect at the direction of another police officer or police agency, even if the officer doesn't have any firsthand knowledge of the facts that amount to the level of suspicion to permit the given action. In other words, that officer doesn't violate the suspect's rights under the Fourth Amendment if the knowledge of the officer directing the stop, search or arrest is sufficient to constitute probable cause. That is what occurred in this case.

Pl.'s Ex. A at 20, Dkt. 45-3. This testimony is inadmissible as it clearly attempts to instruct the jury on the applicable law. To the extent that the collective knowledge doctrine is relevant at trial, the Court will instruct the jury as to the doctrine, and the jury will be permitted to determine how it should be applied to the facts of this case. Accordingly, the Court will exclude Mr. Haug's testimony about excessive force and the collective knowledge doctrine.

### 2. Opinions on Ms. Hardy's Criminal Conduct

Next, Ms. Hardy argues that Mr. Haug's testimony that she committed the crime of battery or disturbing the peace should be excluded as improper legal conclusions. Mr. Haug opines that during the protest Ms. Hardy violated Idaho Code §§ 18-903 and 18-6409, thus supporting a finding of probable cause. He sets forth the elements of each offense before concluding "Ms. Hardy's actions still constituted a battery and were in violation of the law" and "were also clearly in violation of [the disturbing the peace statute]." Pl.'s Ex. A at 21–23, Dkt. 45-3.

Again, it is the exclusive role of the Court to instruct the jury what the law is. *See Bodie*, 858 F.2d at 497. Experts "interpret and analyze factual evidence," they "do not testify about the law." *Id.* Moreover, "an expert witness cannot give her opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (cleaned up). This prohibition "recognizes that when an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment" for that of the jury. *Id.* (cleaned up) (emphasis in original).

Mr. Haug improperly comments on the law by setting forth the elements of each offense, and intrudes on the jury's role by applying the facts as he views them to the law as he understands it. Such testimony is not permitted. Moreover, the Ninth Circuit has made clear that experts cannot opine on whether probable cause existed. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1214 n. 11 (9th Cir. 2008).[1] That is exactly what Mr. Haug does by concluding that Ms. Hardy violated state

---

[1] The defendants suggest *Torres* does not stand for the proposition that experts are not permitted to opine on the existence, or lack of, probable cause. This argument plainly misreads *Torres*, which states "we also agree with Plaintiffs that the district court abused its discretion in denying their motion in limine seeking to bar Defendants' witnesses from testifying as to their own opinion about whether there was probable cause." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1214 n. 11 (9th Cir. 2008)

**MEMORANDUM DECISION AND ORDER - 13**

law at the protest which justified her arrest. This testimony is not permissible

expert testimony and will be excluded.

### 3. Opinions on Malicious Prosecution, and Deliberate Fabrication Claims

Ms. Hardy also argues that Mr. Haug's opinion on her malicious prosecution

and deliberate fabrication claims should be excluded. Mr. Haug concludes that Ms.

Hardy's "allegations of manufactured or fabricated evidence are without merit"

and he can "find no evidence that the defendants worked to participate in any

malicious prosecution of Ms. Hardy." Pl.'s Ex. A at 29, Dkt. 45-3. These opinions

do little more than provide the jury with Mr. Haug's opinion of Ms. Hardy's case.

Rule 704(a) makes clear that "[a]n opinion is not objectionable just because it

embraces an ultimate issue." Fed. R. Civ. 704(a). Even so, "an expert witness

cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate

issue of law." *Diaz*, 876 F.3d at 1197 (quoting *Hangarter v. Provident Life &

Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)). Importantly, testimony that

"undertakes to tell the jury what result to reach" does not aid the jury. *Id.* at 1197.

That is precisely what Mr. Haug's testimony does here. Accordingly, testimony

concerning Ms. Hardy's deliberate fabrication and malicious prosecution claims

will be excluded.

### 4. Opinions on Plainclothes Officers

**MEMORANDUM DECISION AND ORDER - 14**

Finally, Ms. Hardy seeks to exclude Mr. Haug's opinions about the use of plainclothes officers at protests. Mr. Haug offers two opinions related to Lieutenant Kish's presence at the protest: that it was reasonable for Lieutenant Kish to be in plainclothes while policing the protest and that it would have been clear that Lieutenant Kish, despite his lack of uniform, was a law enforcement officer. Ms. Hardy makes several arguments in favor of exclusion, which the Court will address in turn.

First, Ms. Hardy argues Mr. Haug is not qualified to opine on police practices during protests. A witness has the appropriate qualifications to testify as an expert when they have "some special knowledge, skill, experience, training or education" on the subject matter. *Hankey*, 203 F.3d at 1168. Mr. Haug admits that his expertise lies in police practices related to the use of force and arrests, not protests. Pl.'s Ex. C at 82:3–7, Dkt. 45-5. As Ms. Hardy points out, Mr. Haug has never policed a protest, supervised police at a protest, trained others about protests, created policies for policing protects, presented on the subject, or been involved in any other groups. Pl.'s Ex. C at 77:22–78:10, 79:15–80:5; 81:21–82:10, Dkt. 45-5. He also has not previously served as an expert witness in a case involving protests. *Id.* at 10:19–25.

That said, Mr. Haug has experience policing large crowds in other contexts

and has some training in crowd control. *Id.* at 24:22–25:7; 77:7–18. He also explains that he has talked with agencies around the country, and, in some situations, those agencies have used plain clothes offices to de-escalate tense situations. *Id.* This experience and training is enough to qualify him as an expert. Ms. Hardy's concerns regarding Mr. Haug's qualifications go to the weight of the testimony rather than its admissibility.

Second, Ms. Hardy argues Mr. Haug's opinion that it was reasonable for Lieutenant Kish to wear plain clothes is not reliable. "An expert's specialized knowledge and experience can serve as the requisite 'facts or data' on which they render an opinion.'" *Elosu*, 26 F.4th at 1024. Indeed, in some fields "experience is the predominant, if not sole, basis for a great deal of reliable testimony." Fed. R. Evid. 702 advisory committee's notes to 2000 amendments.

Mr. Haug, in support of this opinion, relies on a 2017 article from a website called "Police1," his experience policing other large crowds, and conversations with various agencies about "crisis communication." Pl.'s Ex. A at 18 n.9; Pl.'s Ex. C at 77:7 –77:19; 99:22–100:12; 100:13-102:17, Dkt. 45-5. Ms. Hardy, fairly, points out that Mr. Haug has minimal experience policing protests and has provided little, if any, source material supporting his claim that use of plainclothes police at a protest is reasonable. *See* Pl.'s Ex. C at 77:22–78:10, 79:15–80:5;

81:21–82:10, 103:21-105:9, Dkt. 45-5. Nonetheless "[t]he Court finds that

reviewing case material and relevant documents, and then providing an assessment

of the events in light of Mr. [Haug]'s personal experience in law enforcement, is a

sufficiently reliable methodology." *Briggs*, 760 F. Supp. 3d at 899. Again, the

concerns raised by Ms. Hardy are best addressed by cross-examination, not

exclusion.

Finally, Ms. Hardy argues that Mr. Haug's opinion that it would have been

clear Lieutenant Kish was a law enforcement officer is unhelpful to the jury. At the

outset, this opinion does not appear to relate to Mr. Haug's area of expertise—

police practices. Even if it did, this testimony would not be helpful to the jury.

Expert testimony does not assist the trier of fact when it concerns "lay matters

which a jury is capable of understanding and deciding without the expert's help."

*In re Novatel Wireless Sec. Litig.*, No. 08CV1689 AJB RBB, 2011 WL 5827198, at

* 4 (S.D. Cal. Nov. 17, 2011). Mr. Haug's opinion is based on his review of the

evidence which demonstrates that Lieutenant Kish wore a lapel pin, and his badge

and duty weapon were visible. In Mr. Haug's opinion this is sufficient for a

civilian to understand that Lieutenant Kish was working as law enforcement. That

determination, however, does not require any expertise and is, plainly, a

determination the jury is more than capable of making without expert testimony.

**MEMORANDUM DECISION AND ORDER - 17**

Accordingly, the Court will exclude Mr. Haug's opinion that it would have been clear that Lieutenant Kish was a law enforcement officer.

## ORDER

**IT IS ORDERED that:**

1.    Defendants' Motion in Limine to Exclude Plaintiff's Expert is (Dkt. 43) is **DENIED**.

2.    Plaintiff's Motion in Limine to Exclude Defendants' Expert (Dkt. 45) is **GRANTED IN PART** and **DENIED IN PART.**

DATED: July 22, 2025

B. Lynn Winmill
U.S. District Court Judge