UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

AVALON HARDY,

Plaintiff,

v.

MICHAEL KISH, et al.,

Defendants.

Case No. 1:23-cv-00306-BLW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Before the Court are motions in limine filed by Avalon Hardy (Dkt. 60) and the defendants (Dkt. 55). For the reasons set forth below, the Court will deny Ms. Hardy's first, fourth, and fifth motions in limine as moot and grant in part and deny in part her second and third motions in limine. The Court will deny the defendants' fourth motion in limine as moot and deny the first three motions in limine on the merits.

## BACKGROUND

The facts of this case are set forth in more detail in the Court's previous Memorandum Decision and Order. *See* Dkt. 39. In short, this case arises from Avalon Hardy's arrest in June 2022 at a protest at the Idaho State Capitol. Corporal

Ketchum, an Idaho State Police Officer, was watching the protest through a livestream and ordered Ms. Hardy's arrest for battery on a police officer after watching an interaction between her and Lieutenant Kish. Troopers McClain and Card carried out the arrest and Sergeant DeBie prepared the probable cause affidavit and police report following the arrest. In June 2023, Ms. Hardy filed this action alleging claims against all defendants for wrongful arrest, retaliatory arrest, excessive force, reckless or deliberate suppression of evidence, deliberate fabrication of evidence and malicious prosecution. Dkt. 18. The defendants moved for summary judgment and the Court granted the motion in part, reducing the number of defendants and narrowing the issues for trial. Dkt. 39. Trial is set for August 25, 2025 and both parties have submitted several motions in limine.

## LEGAL STANDARD

### A.    Motions in Limine

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, they are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N.Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). Rulings on motions in limine are preliminary opinions that are "entirely within the discretion of the district court."

*Id.*; *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Further, such rulings are provisional and are, therefore, "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000). Accordingly, at trial, the Court will entertain objections on individual proffers as they arise, even though the proffer falls within the scope of a denied motion in limine. *Luce*, 469 U.S. at 41–42.

### B.    Federal Rules of Evidence 401, 402, & 403

The rules governing relevant evidence, Federal Rules of Evidence 401, 402, and 403, are often central in deciding motions in limine. Rule 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Rule 402 provides that, with certain exceptions, relevant evidence is admissible. Rule 403 provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Unfair prejudice refers to an undue tendency to influence a decision on an improper basis, such as an emotional response, or with evidence designed to elicit

a response from the jurors that is not justified by the evidence. *See United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998). Even if there is only a modest likelihood of unfair prejudice or a small risk of misleading the jury, evidence that presents only slight probative value must be excluded. *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

## ANALYSIS

### A.    Ms. Hardy's First Motion in Limine & Defendants' Fourth Motion in Limine

First, both parties filed motions in limine concerning the disposition of Ms. Hardy's criminal case. Ms. Hardy requested the Court instruct the jury that the prosecutor dropped the felony charge against her and the state court judge acquitted her of the battery charge. Dkt. 60-1 at 3. The defendants, relatedly, moved to limit discussion of the trial court's reasoning for dismissing the state charge. Dkt. 55 at 5. Since the parties appear to agree that an instruction regarding the underlying criminal case is appropriate, the Court will deny both motions as moot and will use Ms. Hardy's proposed instruction 19.

### B.    Ms. Hardy's Second Motion in Limine

Ms. Hardy's motion in limine relates to her previous motion for spoliation remedies. In that motion, Ms. Hardy requested that the Court apply a presumption and give an adverse inference instruction related to the Idaho State Police's failure

to preserve the recording of the livestream Corporal Ketchum was watching when he ordered Ms. Hardy's arrest. Dkt. 29. The Court concluded that the video was "lost" as defined by Federal Rule of Civil Procedure 37(e)(1) but denied the motion because Ms. Hardy could not show "intent to deprive" as required for remedies under Federal Rule of Civil Procedure 37(e)(2). Dkt. 38. The Court, however, left open the possibility that Ms. Hardy may move for the more limited remedies available under Federal Rule of Civil Procedure 37(e)(1). She now does so.

Rule 37 makes clear that "if a specified loss of 'electronically stored information' occurs, then the court 'may impose certain sanctions upon making the findings required, respectively under paragraph (1) or paragraph (2)." *Gregory v. State of Montana*, 118 F.4th 1069, 1078 (9th Cir. 2024) (quoting Fed. R. Civ. P. 37(e)). The Court has already determined sanctions under paragraph (2) are unavailable here. Instead, Ms. Hardy requests sanctions pursuant to paragraph (1), which requires the Court must consider whether the non-spoiling party suffered any prejudice. *Id.* at 1078 (citing Fed. R. Civ. P. 37(e)). Specifically, the prejudice "inquiry looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). To show

prejudice, courts generally require "that a party must only come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 339 (D. Ariz. 2022) (citations omitted, internal quotation marks omitted); *see also Fourth Dimension Software v. DER Touristik Deutschland GmbH*, No. 19-cv-05561-CRB, 2021 WL 5919821, at *10 (N.D. Cal. Dec. 15, 2021) (stating the moving party should provide some "specifics to support" a finding of prejudice).

Ms. Hardy has suffered a prejudice resulting from the spoliation of the video. One of the central issues for trial is whether Corporal Ketchum had probable cause to order Ms. Hardy's arrest. Dkt. 56 at 5–8; Dkt. 50 at 6–8. The loss of the video that Corporal Ketchum relied on when making that determination certainly "interfere[s] with the rightful decision of the case." *Leon*, 464 F.3d at 959. The loss of the video forces Ms. Hardy to rely on other, less direct, evidence of what Corporal Ketchum saw on the video stream.

"Once a finding of prejudice is made, the court is authorized to employ measures 'no greater than necessary to cure the prejudice.'" Fed. R. Civ. P. 37, Adv. Comm. Note (2015 Am.) Ms. Hardy argues that three remedial measures are necessary to cure the resulting prejudice: (1) a prohibition on any testimony about the video, (2) a jury instruction about the lost video, and (3) attorney's fees for

bringing this motion. The Court agrees that the latter two measures are appropriate.

The first suggested remedy, however, is not appropriate because it is greater than necessary to cure the prejudice. Indeed, the Advisory Committee Notes explain that

> Care must be taken. . . to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) . . . An example of an inappropriate (e)(1) measure might be an order . . . precluding a party from offering any evidence in support of, the central or only claim or defendant in the case.

Fed. R. Civ. P. 37, Advisory Committee Notes. Precluding testimony about the video is precisely the type of sanction the Advisory Committee warned against. The requested order would operate to prevent the defendant from offering evidence in support of a central issue in this case—probable cause. This type of sanction is akin to those available under Rule 37(e)(2) that the Court has already determined are unavailable here. Dkt. 38.

The same is not true of Ms. Hardy's requested jury instruction. The defendants suggest this instruction is inappropriate because the Court has already denied Ms. Hardy's request for an adverse inference instruction. While the Court did deny that request, this second request is not for an adverse inference instruction. Rather, Ms. Hardy asks the Court to instruct the jury about the defendants' obligation to preserve the video and their failure to do so without

instructing what inference should be drawn from those facts. This instruction is appropriately tailored to address the prejudice from the loss of the recording. Accordingly, the Court will instruct the jury as follows:

> A recording was made of the live stream on which Officer Ketchum based his decision to order the plaintiff's arrest. Idaho State Police had a duty to preserve those video recordings. Idaho State Police failed to preserve those video recordings. You may consider these facts during your deliberation.

Any objection to this instruction may be raised during the jury instruction conference during the normal course of trial.

Additionally, the Court agrees that Ms. Hardy is entitled to recover her reasonable fees incurred in bringing this motion. She represents that "not a large amount of time" was expended on this motion, so the recoverable fees will be limited. Dkt. 60-1 at 6. Within 30 days of judgment being entered in this case, Ms. Hardy must file a motion for fees setting forth the amount she seeks to recover, counsel's hourly rate, and explaining the reasonableness of those fees with the normal briefing schedule to follow.

### C.    Ms. Hardy's Third Motion in Limine

Ms. Hardy's next motion concerns the two videos of the interaction between Ms. Hardy and Lieutenant Kish. She refers to one as the "YouTube" video and the second as the "July 12-2" video. Both videos were recorded at the June 28, 2022 protest. Ms. Hardy first takes issue with the YouTube video, which she argues has

been so "egregiously chopped" that it must be excluded on Rule 403 grounds. Dkt. 60-1 at 8. The relevant portion of the video shows Lieutenant Kish walking between the two groups of protesters, it then cuts to a clip of other protestors before cutting to the interaction between Ms. Hardy and Lieutenant Kish. Dkt. 27-3 at 6:50–7:50. The clip of Ms. Hardy does not capture the moments before she and Lieutenant Kish make contact, but starts, seemingly, at the moment of contact.

As the defendants point out, the video has some probative value. For one, it bears on the question of whether Corporal Ketchum had probable cause to arrest Ms. Hardy. This probative value is limited because the video is not a direct reflection of what Corporal Ketchum saw at the time he ordered the arrest. That said, the video has significantly more probative value as it relates to the wrongful arrest claim against Lieutenant Kish. Ms. Hardy's claims that, despite not ordering or effectuating Ms. Hardy's arrest, Lieutenant Kish may still be liable as an integral participant. To be held liable under this theory, Lieutenant Kish must have known there was no probable cause to arrest Ms. Hardy yet acquiesced in the arrest by failing to stop it. Dkt. 39 at 12–13 (discussing integral participant theory); *see also Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022). Unlike the question of whether Corporal Ketchum had probable cause where what happened on the ground has only limited probative value, what happened on the ground is critical to

the question of whether Lieutenant Kish knew there was no probable cause to arrest Ms. Hardy.

Turning now to the second step of the Rule 403 analysis, whether this probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Ms. Hardy claims that there is a significant risk the video will mislead the jury. Her principal concern is that it does not show the moments leading up to the interaction with Ms. Hardy as the video cuts to the interaction after it has already begun. Importantly, the YouTube video was prepared by an anti-abortion protestor, who likely had every incentive to show Ms. Hardy and the other pro-choice protestors in a bad light. *C.f.*, *United Sates v. Damrah*, 334 F. Supp. 2d 967, 985 (N.D. Ohio 2004). By a narrow margin, the probative value of the video outweighs the risk that it will mislead the jury. Whether Lieutenant Kish knew there was no probable cause to arrest Ms. Hardy is a significant issue in this case, so while the video is imperfect and runs some risk of misleading the jury, that risk does not outweigh its probative value. Moreover, this risk is mitigated by the existence of another video that shows the context leading up to the interaction, albeit from a different perspective. The Court will, therefore, deny Ms. Hardy's third motion in limine as it relates to the YouTube

**MEMORANDUM DECISION AND ORDER - 10**

video. As with all decisions on motions in limine, this is a provisional ruling which the Court may revisit at the time the video is offered. In addition, if the Court is still of a mind that its probative value outweighs the prejudice of its incompleteness, the Court may give an instruction to the jury highlighting the problems with the video and cautioning the jury that those problems should be considered in assessing its evidentiary value.

Turning now to Ms. Hardy's second request related to the videos. She asks that the Court exclude the "hearsay caption" and two statements made on the video labeled "July 12-2" taken by Cin Alonso. Dkt. 60-1 at 7–8. She suggests, instead, that a video without the caption and statements, labeled "June 28 Hardy Trial Video.mp4," be used instead. *Id.* The defendants agree that the June 28 Hardy Trial Video.mp4 should be used. Dkt. 67 at 6. Since both parties agree, the Court will grant Ms. Hardy's motion in limine with respect to the July 12-2 video.

### D. Ms. Hardy's Fourth and Fifth Motions in Limine

Lastly, Ms. Hardy asks the Court to preclude any "empty chair" arguments from the defendants or any testimony from them suggesting they would be financially responsible for a judgment against them. Dkt. 60-1 at 9. The defendants indicate they do not intend to make any such arguments, so the Court will deny both motions as moot. Dkt. 67 at 6.

**MEMORANDUM DECISION AND ORDER - 11**

### E.    Defendants' First Motion in Limine

The defendants first move to preclude any testimony regarding Ms. Hardy's physical injuries as irrelevant. They argue that since Ms. Hardy's excessive force claims have been resolved, any testimony regarding physical injuries and the economic damages resulting from those injuries is irrelevant.

"A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations." *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988). Indeed, "Ninth Circuit case law and the general policy goals underlying section 1983 suggest that where a constitutional violation has led to an *actual* injury, a plaintiff should be compensated for that injury. *Rodriguez v. City of Los Angeles*, No. CV 11-1135 DMG (JEMx), 2015 WL 13308598, at *12 (C.D. Cal. 2015) (citing *Hazle v. Crofoot*, 727 F.3d 983, 993 (9th Cir. 2013) (emphasis in original)). "The [Supreme] Court noted that 'plaintiffs can—subject to qualified immunity— generally recover damages that are proximately caused by any Fourth Amendment violation.'" *Mendez v. Cnty. of Los Angeles*, 897 F.3d 1067, 1073 (9th Cir. 2018) (quoting *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 430–31 (2017)).

If Ms. Hardy's physical injuries were proximately caused by the defendants'

Fourth Amendment violation, she should recover those damages. The Court sees no reason to preclude Ms. Hardy from presenting evidence to support this claim for damages—even in the absence of an excessive force claim. Accordingly, the defendants' first motion in limine is denied.

### F.    Defendants' Second Motion in Limine

The defendants next move to exclude a February 27, 2023 email sent by Lieutenant Kish to Idaho State Police's communications director in response to an email sent to the director from a reporter for the Idaho Statesman. *See* Defs. Exhibit A, Dkt. 55-2. They argue both the email from the communications director and Lieutenant Kish should be excluded.

First, the defendants argue that Lieutenant Kish's email should be excluded because it is irrelevant and, even if it were relevant, the probative value is outweighed by other considerations under FRE 403. At the outset, the email is plainly relevant. For one, Lieutenant Kish's statements suggest he was involved, at least to some degree, with Ms. Hardy's prosecution. This fact relates directly to Ms. Hardy's malicious prosecution, suppression of evidence, and fabrication of evidence claims. It also relates to her wrongful arrest and retaliation claims as it supports Ms. Hardy's claim that Lieutenant Kish was aware of, and involved in, her arrest. Moreover, it relates to Lieutenant Kish's credibility and, as such, is also

likely admissible as a prior inconsistent statement of a party-opponent. Fed. R. Evid. 613(b), 801(d)(2).

The defendants' FRE 403 argument is that the email is "tangential" to the case. The Court understands this to be an argument that the probative value of the evidence is outweighed by the fact that it will result in wasted time. Fed. R. Evid. 403. The defendants suggest that any discussion of this email will wade into irrelevant matters such as Idaho State Police's policies. Dkt. 55-1 at 4. In reality, it seems unlikely that the presentation of this email will require any significant discussion of Idaho State Police's policies and, to the extent it does, the probative value of the email outweighs this concern. *See* Fed. R. Civ. P. 403.

Second, the defendants argue the initial email from the communications director, Aaron Snell, is hearsay. Ms. Hardy argues that this email need not be excluded for several reasons: Lieutenant Kish adopted the statements, the communications director was authorized to make statements on Lieutenant Kish's behalf, and the email may be used for the nonhearsay purpose of providing context to Lieutenant Kish's statements. The Court agrees that this email is admissible as an adoptive admission of a party opponent. Rule 801(2)(B) provides that statements adopted by a party-opponent do not constitute hearsay when offered against an opposing party and "is [a statement] the party manifested that it adopted

or believed to be true." Fed. R. Evid. 801(d)(2)(B).

Here, Mr. Snell responded to several questions from a reporter and then forwarded those responses to Lieutenant Kish. Def. Ex. A, Dkt. 55-2. Lieutenant Kish responded thanking Mr. Snell and apologizing that he was "the guy to help do damage control." *Id.* Lieutenant Kish's response thanking Mr. Snell "'manifested an adoption or belief in [the] truth' of the information contained in the original email." *Sea-Land Service, Inc. v. Lozen Intern., LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (quoting Fed. R. Evid. 801(d)(2)(B)) (alterations in original). Lieutenant Kish did not correct, or take issue, with any of the responses provided to the reporter, again, indicating his belief in the truth of the information. Moreover, the email is also admissible for the non-hearsay purpose of providing context to Lieutenant Kish's statements. *United States v. Barragan*, 871 F.3d 689, 705 (9th Cir. 2017). Accordingly, the defendants' second motion in limine is denied.

### G.    Defendants' Third Motion in Limine

Lastly, the defendants move to preclude evidence concerning the second person arrested at the protest. They argue it is irrelevant because Ms. Hardy does not allege any claim of racial discrimination and the intake form for the second arrestee identified her as white. As Ms. Hardy points out, however, evidence about the second person arrested at the protest is relevant to her malicious prosecution

claim. To prove that claim, she must show she was prosecuted "for the purpose of denying [her] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2005). Demonstrating that Ms. Hardy was arrested based upon her race would satisfy that standard. *Id.* The parties disagree on a factual matter—how the second arrestee's race was catalogued in the report. That dispute is not properly resolved in a motion in limine, but at trial.

In any event, even if, as the defendants claim, the second arrestee was white, her arrest is still relevant. Just as demonstrating Ms. Hardy was arrested based upon her race would show she was arrested "for the purpose of denying [her] equal protection" so too would demonstrating that she was arrested based upon her gender. *Awabdy*, 368 F.3d at 1066. The second arrestee, like Ms. Hardy, was a woman, thus her arrest is relevant to a claim that Ms. Hardy was denied equal protection based on her gender. As such, Ms. Hardy is entitled to present evidence to support this claim, so the Court will deny the defendants' third motion in limine.

### H.    Trial Briefs

In addition to filing motions in limine, the parties have raised several evidentiary issues in their trial briefs. More specifically, the defendants indicate they intend to introduce evidence of Ms. Hardy's prior felony conviction, prior arrests, and her post-arrest protest activity. To avoid any lengthy delays during

trial, the Court will, briefly, provide some guidance to the parties as to the introduction of this evidence, even in the absence of formal motions in limine.

### 1. Prior Felony Conviction

The defendants argue they are entitled to ask Ms. Hardy about her 2008 forgery conviction pursuant to Federal Rule of Evidence 609(a)(1)(B). While paragraph (a) governs the use of prior convictions, paragraph (b) places a limit on the use of this evidence if 10 years have passed since the conviction or release from confinement—whichever is later. Fed. R. Evid. 608(b). When the requisite time has passed, evidence of a conviction is only admissible if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect," and the proponent provides adequate notice of its intent to use the conviction. *Id*.

Ms. Hardy's last confinement related to her forgery conviction ended in April 2015, so the limits outlined in paragraph (b) apply here.[1] Ex. A at 9, Dkt. 64. The defendants have not provided any "specific facts and circumstances" that

---

[1] Ms. Hardy explains that her most recent period of confinement related to a technical probation violation, so that term of confinement does not count for the purposes of computing time under Rule 609(b). *United States v. Wallace*, 848 F.2d 1464, 1472–73 (9th Cir. 1988). Even if this confinement did count toward the Rule 609(b) computation, the limitations in paragraph (b) would apply to the use of the conviction.

justify the use of a 2008 conviction. Accordingly, before asking Ms. Hardy about this conviction they must first show, outside the presence of the jury, that "specific facts and circumstances" exist such that the probative value of the conviction outweighs the prejudicial effect. Absent any such showing, the defendants may not ask about Ms. Hardy's felony conviction.

### 2.  Prior Arrests and Convictions

The defendants also intend to ask Ms. Hardy about her prior arrests and incarceration. They argue this evidence is relevant to her emotional damages. More specifically, they argue her interactions with the criminal justice system—specifically the time spent in jail and in handcuffs—undermines her claim that she suffered emotional damage as a result of this arrest. Ms. Hardy argues admission of this evidence is prohibited under Rule 404(b).[2]

Rule 404(b)(1) prohibits the use of propensity evidence. It states: "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Conversely, Rule 404(b)(2) allows the admission

---

[2] Ms. Hardy also argues that this evidence is prohibited under Federal Rule of Evidence 608(b). The Court does not address this argument because the defendants do not intend to use Ms. Hardy's arrest history to attack her credibility, but to support their argument as to damages.

of such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Even if evidence clears the Rule 404(b)(1) hurdle and would be offered for a permissible purpose under Rule 404(b)(2), the evidence must also withstand scrutiny under Rule 403. Rule 403 authorizes courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

While the Ninth Circuit has not specifically addressed the relevance of previous arrests to a claim for emotional damages, other circuits have, generally, favored exclusion of this type of evidence. For example the Seventh Circuit found that a district court erred by admitting evidence of a civil rights plaintiff's prior arrests to support the defendants' theory that the plaintiff's "history of arrests either *mitigated* his fear during the traffic stop (because being arrested was old hat for him) or *augmented* it (because his numerous encounters with the police suggest that some of his emotional injury might have been preexisting)." *Nelson v. City of Chicago*, 810 F.3d 1061, 1069 (7th Cir. 2016); *see also Sanchez v. City of Chicago*, 700 F.3d 919, 931 (7th Cir. 2012). The Fourth Circuit, adopting the reasoning in *Nelson*, addressed a similar argument to that presented by the

defendants here—that the plaintiff's past arrests are relevant to the emotional damages she suffered from the challenged arrest—and found the district court erred by admitting the evidence of her past arrests. *Smith v. Baltimore City Police Department*, 840 F.3d 193, 203 (4th Cir. 2016).

At the outset, the Court agrees with the defendants that this evidence may be offered for a purpose other than to show propensity. *See e.g.*, *Udemba v. Nicoli*, 237 F.3d 8, 15 (1st Cir. 2001) ("[A]dmission of evidence of other bad acts to assist the jury in measuring the extent of damages is a legitimate, non-character-based use of such evidence."). Federal Rule of Evidence 404(b)(1), therefore, does not preclude the introduction of this evidence.

Even so, there is a significant risk of prejudice that, on the current record, favors exclusion under Rule 403. For one, the defendants do not explain what arrests or incarceration they intend to ask Ms. Hardy about. The simple fact that she has been arrested before has little probative value. Indeed, the only arrests the Court is aware of are those related to the 2008 conviction and, potentially, the subsequent probation violations. These arrests have "'miniscule probative value' on the question of damages" as "the arrests were distant in time" and occurred in an entirely different factual context. *Nelson*, 810 F.3d at 1069.

At the same time, the risk of prejudice is obvious. For one, it is often

difficult for juries to discern the difference between an arrest and a conviction and, even when they do, "evidence of prior arrests . . . generally impugns character." *Id.* at 1069. Of particular concern here, where a central issue is probable cause, is that evidence of past arrests "invites the jury to draw a propensity inference, forbidden by Rule 404(b), that the plaintiff is a serial law breaker and general troublemaker and the police must have had probable cause to arrest h[er]." *Id.* Even accepting that this evidence does have some probative value, "practical experience [is] that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Michelson v. United States*, 335 U.S. 469, 476 (1948).

If the defendants intend to introduce evidence of some other, more recent, arrests, that may change the outcome of Rule 403's balancing test. So too might testimony from Ms. Hardy that renders her previous arrests or incarceration relevant. This determination will almost certainly turn on the context of Ms. Hardy's previous arrests and if they bear any resemblance to Ms. Hardy's arrest at this protest. *See Smith*, 840 F.3d at 203 ("Perhaps most damning to Appellees' position, however, is not what defense counsel said, but what he failed to say. Appellees made no record of—and the district court did not inquire—whether these prior arrests were of a similar nature to the case at hand."). As the Seventh Circuit recognized, there is good reason be skeptical of attempts to introduce a

civil-rights plaintiff's arrest history:

> [It] would seemingly permit any civil-rights plaintiff's criminal history to come in on the issue of emotional-distress damages, no matter how tenuous a connection the evidence has to the issue of damages or how central a role emotional distress plays during the plaintiff's case. This, of course, would be contrary to our prior statements instructing courts to proceed carefully when deciding to admit evidence of a § 1983 plaintiff's criminal past.

*Barber v. City of Chicago*, 725 F.3d 702, 708 (7th Cir. 2013). That skepticism is justified here. As such, before introducing any evidence of prior arrests or incarceration, the defendants must explain, outside the presence of the jury, its probative value and how that value outweighs the prejudice to Ms. Hardy.

### 3. Post-Arrest Protest Activity

Finally, the defendants want to show several videos and photos of Ms. Hardy at other protests following her arrest in June 2022. They argue this evidence is relevant to Ms. Hardy's first amendment retaliation claim. Specifically, Ms. Hardy must show, among other things, the action taken by police "would chill or silence a person of ordinary firmness from future First Amendment activities." *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010)).

Ms. Hardy appears to agree that her post-arrest protest activity may be relevant to her retaliation claim. Dkt. 64 at 5. She argues, however, that her own testimony on the timing, frequency, and extent of her protest activity negates the

need to introduce the videos and pictures. The Court is generally inclined to agree with Ms. Hardy that these videos and pictures are likely to be cumulative of other evidence, cause undue delay, and, potentially, mislead the jury.

Turning first to defendants Exhibits 2000, 2003, 2004, and 2005. These exhibits, three photos and one video, appear to simply show Ms. Hardy standing at protests. If Ms. Hardy does not deny being present at these protests, it is unclear what additional probative value these photos and video have. Introduction of these photos and video would be cumulative of other evidence, such as Ms. Hardy's testimony about her presence, and provide little probative value in return. The Court is very unlikely to admit these exhibits absent a showing of some probative value beyond that provided by Ms. Hardy's testimony.

Exhibits 2006 and 2007 are also minimally probative. Both exhibits are bodycam footage from two officers that show Ms. Hardy participating in a pro-Palestine protest. *See* Def. Ex. 2006 and 2007. Again, this appears to be material that could easily be covered by Ms. Hardy's testimony and two twenty-minute videos of an unrelated protest would result in undue delay and be needlessly cumulative. With the information currently available to the Court, the Rule 403 balancing test favors exclusion. That is not to say this evidence will certainly be excluded, only that if the defendants wish to introduce this evidence at trial, they

must demonstrate some additional probative value to the videos beyond establishing Ms. Hardy's presence at or participation in other protests following her arrest.

## ORDER

**IT IS ORDERED that:**

1.      Plaintiff's Motions in Limine (Dkt. 60) is **GRANTED IN PART AND DENIED IN PART**. Her first, fourth, and fifth motions are denied as moot and her second and third motions are granted in part as set forth above.

2.      Defendants' Motions in Limine (Dkt. 55) are **DENIED**.

DATED: August 14, 2025

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 24**