UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AVALON HARDY,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL KISH, et al.,<br><br>Defendants. | Case No. 1:23-cv-00306-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

This case arises from Avalon Hardy's arrest for felony battery of a police officer during a protest at the Idaho State Capitol. Hardy was eventually tried on a reduced charge of misdemeanor battery and acquitted by the state magistrate judge for lack of evidence before submission to the jury. Following her acquittal, Hardy filed this action against the Idaho State Police officers involved in her arrest and prosecution, alleging six claims. Defendants moved for summary judgment on all claims, and the Court granted the motion in part, dismissing the two arresting ISP troopers, dismissing Hardy's excessive force claim in its entirety, and narrowing the claims against the remaining Defendants.

On August 25, 2025, the case proceeded to trial on the five remaining claims against Defendant Michael Kish, the ISP officer Hardy allegedly battered, and the two remaining claims against Defendant Troy DeBie, the ISP officer who wrote the police

report and probable cause affidavit.[1] Two days into trial, the Court declared a mistrial after DeBie testified that he still retained a never-produced video showing Hardy peaceably protesting near Kish in a thicket of combative protesters and counter-protesters, shortly before she allegedly battered him.

Following the mistrial, the Court permitted Hardy to pursue curative discovery and to seek reconsideration of the Court's summary judgment ruling in favor of DeBie on the suppression of evidence claim. Hardy's motion to reconsider is now pending, along with related motions for discovery sanctions and additional spoliation remedies. *See* Dkts. 88, 89, 93. For the reasons set forth below, the Court will grant the motion to reconsider and grant in part and deny in part the other motions.

## BACKGROUND

The background of this case is set out in the Court's prior decisions, so only a brief account of the relevant facts is needed here. As it must at summary judgment, the Court credits Hardy's evidence and draws all justifiable inferences in her favor.[2] On June 28, 2022, Avalon Hardy assembled with many others on the Idaho State Capitol steps to protest the Supreme Court's decision in *Dobbs v. Jackson Women's Health*. *See Hardy Dep.* 86:7–89:23, Dkt. 30-2. Hardy had co-organized the event in response to an anti-

[1] Hardy also sued the officer who ordered her arrest, Charles Ketchum. Prior to the other four defendants moving for summary judgment, Hardy accepted Ketchum's offer of judgment, and the Court entered a partial judgment for the claims against Ketchum. *See Offer of Judgment*, Dkt. 22; *Partial Judgment*, Dkt. 23.

[2] Because Hardy seeks reconsideration of the Court's order granting Defendants' motion for summary judgment, the Court adheres to the axiom that "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

abortion group's planned celebration of the decision. *Id.* Tensions quickly escalated as the two groups faced off on opposite sides, hurling insults at each other while law enforcement lined up between them, trying to keep them separated. *See M.G. Decl.* ¶¶ 5–6, Dkt. 94; *Kish Aff.* ¶¶ 2–3, Dkt. 27-11.

Kish and DeBie were among the officers tasked with managing security at the event. DeBie wore his uniform so he could be easily identified as law enforcement. *DeBie Dep.* 35:12–23, Dkt. 29-13. Kish sported a blue blazer, having found that wearing "civilian clothes" makes him seem more "human" and removes the "barrier" a uniform erects between officers and protesters. *Kish Dep*. 157:6–14, Dkt. 29-10. Nothing Kish wore identified him as law enforcement except the badge on his belt, which the blazer could easily obscure. *DeBie Dep.* 36:2–8, Dkt. 29-13.

According to Kish, "many individuals [at the event] were aggressive, but particularly the counter protestors." *Kish Aff.* ¶ 2, Dkt. 27-11. But M.G., another pro-choice protester at the event that day, tells a slightly different story. [3] She started taking a video because she "saw anti-abortion protesters getting aggressive with pro-choice protesters." *M.G. Decl.* ¶ 5, Dkt. 94. The video shows an anti-abortion protester and Idaho Liberty Dogs member, Cindy Alfonso, raising her middle finger at a pro-choice protester and using her other hand to shove the protester's sign back into her face. *Id.*, Ex. 1 (M.G. video). Next to Alfonso is another anti-abortion protester brandishing brass knuckles and kicking at the counter-protesters. *Id.*. Both groups can be heard yelling

[3] Hardy sought, and the Court granted, a protective order allowing M.G. to proceed anonymously at this stage of the litigation. *See* Dkt. 111.

obscenities at each other. *Id.* During this encounter, Kish was standing nearby when someone yelled, "Dude, where's the cops?" *Id.* Hardy can be seen in the background, peacefully chanting and holding her sign. *Id.*

Soon after, however, Hardy found herself in the thick of the fray, getting pulled into a heated argument with Alfonso, who had a history of taunting her at prior protests. *See Hardy Dep.* 139:9–22, Dkt. 30-2; *Eppink Decl.*, Ex. D, Dkt. 88-2 (synchronized video). During the melee, Hardy bumped Kish, who had stepped between the two women and held up his arm to hold Hardy back. *Eppink Decl.*, Ex. D, Dkt. 88-2 (synchronized video). Kish spoke briefly with Hardy and another protester before Hardy and Kish again made some kind of contact as she tried to move past him in the crowd. *Id.* Despite the contact, Kish simply continued through the crowd, taking no action against Hardy. *Id.*

But ISP Captain Charles Ketchum, who had been watching the protest via a soundless livestream from the ISP "command post" several miles away, ordered Hardy's arrest for felony battery of a police officer, identifying Kish as the alleged victim. *Ketchum Dep.* 30:8–13, Dkt. 29-17. On Ketchum's orders, two uniformed troopers located Hardy in the crowd and arrested her. They placed her in a waiting police car and transported her to the Ada County Jail. *Geffon Aff.*, Ex. A, Dkt. 27-4 (bodycam video).

Meanwhile, DeBie did not witness the alleged battery because he had left his station on the sidewalk in front of the Capitol to deal with "some sort of scuffle or fight" between anti-abortion and pro-choice protesters, which turned out to be the same incident M.G. had videoed. *DeBie Dep.* 7:5–8:14; 34:8–20, Dkt. 29-13. DeBie located the person whom several people had identified as the victim in the altercation and asked to speak

with her away from the crowd. *2d DeBie Dep.* 11:5–14:1, Dkt. 89-2. M.G. came along and told DeBie she had taken a video of the alleged assault, which she airdropped to his phone. *Id.* 14:2–10; *M.G. Decl.* ¶ 11, Dkt. 94. She says she also told him that she did not see "the African-American woman," whom she later learned was Hardy, "or any pro-choice protesters, assault anyone." *Id.* ¶ 11. DeBie watched the first part of M.G.'s video a few times and then went to speak with Alfonso, who said the other protester had pushed the sign in her face and she had just slapped it away. *2d DeBie Dep.* 16:11–17:12, Dkt. 89-2. He did not pursue the matter further. *Id.* Sometime after the incident, M.G. also spoke with Kish and told him that "anti-abortion protesters had punched and kicked pro-choice protestors" and that she "did not see anyone except anti-abortion protesters assault anyone." *M.G. Decl.* ¶ 9, Dkt. 94.

At the end of the protest, Ketchum, DeBie, Kish, and other officers at the event held a debrief meeting to discuss the events of the day. DeBie told the other officers that he had investigated an alleged assault captured on M.G.'s video. *2d DeBie Dep.* 30:3–31:9, Dkt. 89-2; *2d Kish Dep.* 8:5–18, Dkt. 89-3. The officers also discussed Hardy's arrest, and Ketchum assigned DeBie to prepare the probable cause affidavit and the police report. *DeBie Dep.* 15:13–16:9, Dkt. 29-13.

DeBie did not witness Hardy's alleged battery of Kish, and he did not review the streaming video Ketchum had been viewing before ordering Hardy's arrest. *Id. 17:6–16.* Nor did DeBie review the remainder of the one video he had from the protest, which he retained on his phone. *2d DeBie Dep.* 16:11–17:12, Dkt. 89-2. He therefore relied solely on his conversation with Kish to draft the report and affidavit, which stated that Hardy

"repeatedly shoved" Kish and "continued to shove him with her hands and chest." *Probable Cause Aff.*, Ex. I, Dkt. 27-3 at 51.

The report and affidavit were provided to the Ada County prosecutor's office, *Kish Aff.* ¶ *6,* Dkt. 27-11*,* and Hardy was charged with felony battery of a police officer, *Ashbury Aff.* ¶¶ 2-3, Dkt. 27-5. DeBie never told the prosecutor about M.G. or the video she airdropped to him, *2d DeBie Dep.* 34:8–11, Dkt. 89-2, even though the prosecutor's office had asked him to provide everything he had regarding the case, *Eppink Decl.*, Exs. 2 & 3, Dkts. 88-4, 88-5. Some months later, Hardy was tried for misdemeanor battery after the prosecutor reduced the felony charge to a misdemeanor. *Ashbury Aff.* ¶¶ 1–2, Dkt. 27-5. After hearing the state's case, the magistrate judge acquitted Hardy for lack of sufficient evidence, finding that Hardy's contact with Kish appeared "entirely incidental, unintentional." *State Trial Tr.*, Dkt. 27-3 at 48.

Upon her acquittal, Hardy sued Ketchum, Kish, DeBie, and the two arresting officers, alleging claims for wrongful arrest, First Amendment retaliation, excessive force, malicious prosecution, deliberate fabrication of evidence, and reckless or deliberate suppression of evidence. *See Am. Compl.*, Dkt. 18. Before Hardy learned about M.G. and the video she airdropped to DeBie, the Court granted summary judgment in favor of DeBie on the reckless or deliberate suppression of evidence claim against him. Hardy now asks the Court to reconsider this decision in light of the newly discovered evidence. She also moves for discovery sanctions arising from the untimely disclosure of the video and for additional spoliation remedies stemming from Kish's destruction of notes he took about the alleged battery.

## ANALYSIS

### A. Motion to Partially Reconsider Summary Judgment

Hardy seeks partial reconsideration of the Court's order granting summary judgment in favor of DeBie on the suppression of evidence claim because of the newly disclosed protester video, DeBie's and Kish's subsequent testimony about it, and M.G.'s new testimony. Because M.G.'s video surfaced for the first time on the second day of trial, despite Hardy's discovery requests clearly asking for it, it is newly discovered evidence that warrants partial reconsideration of the Court's summary judgment decision. *See Hathaway v. Jefferson County*, No. 4:23-CV-00254-BLW, 2025 WL 974658, at *1 (D. Idaho Apr. 1, 2025) (citing *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. AC&S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)).

In its prior decision, the Court set forth the standards governing a reckless or deliberate suppression of evidence claim. To prevail on this claim against DeBie, Hardy must show (1) DeBie suppressed evidence favorable to her, (2) the suppression harmed her, and (3) DeBie acted with deliberate indifference or reckless disregard for her rights or the truth. *Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018). Acquittal or dismissal does not bar such a claim. *Soo Park v. Thompson*, 851 F.3d 910, 925 (9th Cir. 2017). Upon reconsideration, in light of the late-disclosed video and new testimony from M.G., a reasonable jury could find each of these elements satisfied.

#### 1. Favorability and Harm

DeBie drafted the police report and probable cause affidavit to support the initial charge against Hardy for felony battery of a police officer. DeBie did not witness the

alleged battery, so he relied on Kish's account of what supposedly occurred. *DeBie Dep.* 6:12–25, Dkt. 29-13. And Kish has painted Hardy and other counter-protesters as the aggressors, saying they were particularly aggressive and that Hardy "was attempting to attack Cindy Alfonso" when he intervened. *Kish Aff.* ¶ 4, Dkt. 27-11. Yet DeBie had a video on his cell phone showing Hardy doing nothing more than chanting and holding her sign shortly before she allegedly battered Kish, all while Alfonso, standing nearby, shoved a sign back into a counter-protester's face, and a fellow anti-abortion protester brandished brass knuckles and kicked at counter-protesters.

The video also shows the tightly packed quarters near Kish, which bear directly on whether Hardy's contact with him was willful or simply the incidental jostling of bodies in a dense crowd. And it shows that Kish, in his blue blazer, was so unrecognizable as law enforcement that someone in the crowd shouted, "Dude, where's the cops?" while Kish stood squarely in the frame. This is no small matter, given that felony battery on a police officer requires proof that the accused knew or reasonably should have known the victim was an officer. *See* I.C. § 18-915(3). Each of these features arguably tends to cast doubt on the government's case against Hardy, and was thus favorable to her. *Soo Park*, 851 F.3d at 926. The same is true of statements made by M.G., who says she told DeBie that day that she did not see Hardy, or any pro-choice protester, assault anyone. *M.G. Decl.* ¶ 11, Dkt. 94. A percipient witness who tells an officer that she saw no battery is favorable to the accused by any measure.

Defendants respond that the video does not capture the alleged battery itself, only events about a minute earlier, and that a minute is plenty of time for the crowd to shift

and for Hardy's demeanor to change. A jury may see it that way. Or perhaps the jury will agree with Hardy's expert, the former director of Idaho POST, who opines that "DeBie's failure to disclose video evidence he possessed . . . represented material omissions that deprived the prosecution and defense of critical evidence bearing on probable cause." *McCraw Supp. Report*, Dkt. 88-11 at 7. This is a factual dispute that the Court cannot resolve in Defendants' favor at summary judgment. *Tolan*, 572 U.S. at 656–57 (explaining Fifth Circuit erred in failing to believe nonmovant's evidence on summary judgment and draw all reasonable inferences in his favor).

As for harm, the analysis tracks the Court's earlier ruling on the parallel claim against Kish. There, the Court concluded that Kish's undisclosed reaction to news of the arrest, a reaction suggesting the contact was so minor that the alleged victim did not notice it, was information Hardy might have used to persuade the prosecutor not to file charges or to drop them before trial. *Summ. J. Order*, Dkt. 39 at 28.

The video is at least as useful. It was the lone video DeBie collected at the protest, and he had it when he prepared the police report and probable cause affidavit. *2d DeBie Dep.* 28:25–30:2; 37:4–12, Dkt. 89-2. Other footage of the protest existed, including videos the anti-abortion protesters took and a video the prosecutor used at the criminal trial. But DeBie's was the only footage the investigating officer had in hand, and he never sent it to the prosecutor or disclosed that it existed. *2d DeBie Dep.* 34:8–11, Dkt. 89-2. It would have added a ground-level view of the scene the prosecutor otherwise lacked when making the initial screening and charging decisions. Armed with footage showing a peaceful Hardy, a crush of bodies, and an officer no one could identify as such, Hardy

might well have persuaded the prosecutor to decline the felony charge at the outset, rather than watching it hang over her for months, until it was reduced to a misdemeanor. Her inability to do so is enough to permit a jury to find harm.

### 2. Deliberate Indifference or Reckless Disregard

Whether DeBie acted with deliberate indifference or reckless disregard is a question of fact, *Mellen*, 900 F.3d at 1101, and Hardy has offered sufficient evidence to allow a jury to decide this issue as well. DeBie knew Hardy faced a felony charge carrying up to five years in prison. *Trial Tr.* 181:7–15, Dkt. 85. He was the officer responsible for the police report and probable cause affidavit supporting that charge, and he had a photograph of Hardy in hand while preparing them. *Id.* 173:8–19; 180:14–20. All the while, the lone video he had from the protest sat on his phone, unwatched beyond its opening seconds and undisclosed, even after the prosecutor's office asked him in writing for everything law enforcement had regarding the case. *2d DeBie Dep.* 37:4–12, Dkt. 89-2; *Eppink Decl.*, Exs. 2 & 3, Dkts. 88-4, 88-5.

A jury could conclude that a reasonable officer in DeBie's position would at least have watched the one video he collected before attesting to probable cause, and would have turned it over when asked. *See McCraw Supp. Report*, Dkt. 88-11 at 2, 8. Deliberate indifference requires no showing of bad faith, *Tennison v. City & Cnty. of San Francisco*, 570 F.3d 1078, 1090 (9th Cir. 2009), and an officer may be liable for failing to provide complete and developed reports to the prosecutor or for selectively collecting evidence, *Klene v. Winn*, No. 24-7805, 2025 WL 3022513, at *1–2 (9th Cir. Oct. 29, 2025) (citing *Mellen*, 900 F.3d at 1103) (explaining detective could be liable for suppression of

evidence based on her provision of incomplete reports to prosecutors and her selective collection of evidence).

DeBie offers an innocent explanation. The video, he says, documented a squabble between nonparties that went nowhere, and he had no reason to think the footage bore on Hardy's case. *2d DeBie Aff.* ¶¶ 1–2, Dkt. 113-1. His expert agrees, opining that setting the video aside during a chaotic, rapidly evolving protest was consistent with accepted police practices. *Haug Aff.*, Ex. A, Dkt. 113-2 at 14, 20. As explained above, however, Hardy's expert disagrees, describing the video's withholding as a "material omission." *McCraw Supp. Report*, Dkt. 88-11 at 2, 7. And DeBie's explanation is undercut by his own admission that he never watched enough of the video to know that Hardy appeared in it. *2d DeBie Dep.* 16:11–17:12, Dkt. 89-2. DeBie likewise denies that M.G. told him she saw no assault by Hardy, but M.G. swears she did, and that disputed factual question belongs to the jury. *Compare DeBie Aff.* ¶ 1, Dkt. 113-1, *with M.G. Decl.* ¶ 11, Dkt. 94; *see Mellen*, 900 F.3d at 1102 (whether a disputed conversation took place is "a factual question for the jury").

In short, disputed issues of material fact preclude summary judgment for DeBie on this claim. *Tolan*, 572 U.S. at 657. Accordingly, the Court will grant the motion to reconsider and, on reconsideration, deny summary judgment to DeBie on the reckless or deliberate suppression of evidence claim.

### 3. Scope of Reconsideration

Hardy also asks the Court to make clear that its prior decision does not bar her from advancing theories and evidence that came to light only after the video surfaced,

including M.G.'s testimony and Kish's admission that he threw away the notes he made about the alleged battery, in support of her remaining claims. *2d Kish Dep.* 27:15–28:12, Dkt. 89-3. The request is well taken. The Court's summary judgment decision addressed the record then before it; it did not freeze the proof for trial. And because exclusion of evidence must be evaluated cumulatively, considering the collective materiality of everything withheld, the newly discovered evidence bears on the suppression claim against Kish as well. *Browning v. Baker*, 875 F.3d 444, 464 (9th Cir. 2017). Hardy may present the newly discovered evidence and related theories at retrial, subject to the ordinary rules of evidence and the Court's rulings in limine.

**B. Motion for Discovery Sanctions**

Hardy asks the Court to remedy the untimely disclosure of the video by (1) awarding reasonable fees and costs resulting from the mid-trial disclosure, (2) informing the jury that Defendants failed to timely disclose the video, and (3) ordering Defendants and their counsel to provide certifications that all discovery materials have been produced.

A party who has responded to a request for production must supplement or correct its response "in a timely manner" upon learning that the response is incomplete, unless the missing information has "otherwise been made known" to the other party during discovery or in writing. Fed. R. Civ. P. 26(e)(1)(A). When a party fails to meet that obligation, it may not use the withheld information at trial unless the failure was substantially justified or harmless. In addition to or instead of that sanction, the Court

may order payment of the reasonable expenses caused by the failure, inform the jury of the failure, and impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1).

Exclusion would be a toothless sanction here, since the withheld video favors Hardy, the party who requested it, and excluding it would punish the wrong party. *See Stanphill v. Health Care Service Corp.*, No. CIV-06-985-BA, 2008 WL 2359730, at *6 n.20 (W.D. Okla. June 3, 2008) (quoting Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment ("Preclusion of evidence is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party.")). The question, then, is whether the nondisclosure was substantially justified or harmless and, if not, what remedy fits. In answering it, courts weigh (1) the prejudice or surprise to the requesting party, (2) that party's ability to cure the prejudice, (3) the likelihood of trial disruption, and (4) bad faith or willfulness. *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)); *see also Davis v. Pinterest, Inc.*, 601 F. Supp. 3d 514, 526 (N.D. Cal. 2022).

**1. Harmlessness and Substantial Justification**

The question of harmlessness can be dispatched with relative ease. The video's mid-trial debut derailed a jury trial and forced a mistrial, which is about as far from harmless as a discovery lapse gets. And the prejudice ran deeper than the wasted trial days. Hardy litigated this case for two years without the video DeBie collected at the protest. Timely disclosure would have led her counsel to M.G., the videographer and a percipient witness, in 2023, when her memory of the protest was far fresher, rather than

after a mistrial and on a reopened discovery schedule a fraction of the length of the original. *See Regency Outdoor Advertising v. City of Los Angeles*, No. CV9910456GHKJCGX, 2011 WL 13273629, at *3 (C.D. Cal. Oct. 5, 2011) (citing *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 105 (D.N.J. 2006) (prejudice from untimely discovery responses includes the "inevitable dimming of witnesses' memories")).

The nondisclosure was all the more damaging because Hardy's counsel had built, and begun presenting, a trial record without the video. That the failure could not be cured without significantly disrupting the trial confirms it was not harmless. *See Samsung Elecs. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 199 (E.D. Va. 2016).

Defendants resist that conclusion by trying to shift the blame to Hardy and her counsel. DeBie mentioned the video twice at his June 2024 deposition, saying "I had a copy of it, I believe, on my phone somewhere," and, Defendants say, Hardy's counsel could have followed up at any point in the fourteen months between that deposition and trial. *DeBie Dep.* 8:12–14, Dkt. 29-13. In essence, Defendants argue their late disclosure of the video was harmless because Hardy had notice of the video but failed to ask DeBie any more questions about it or to demand that Defendants supplement their discovery responses.

A party's failure to provide information or identify a witness in its initial disclosures may be considered harmless if such information has otherwise "been made known" to the other party during the discovery process. *See, e.g.*, *Van Maanen v. Youth With A Mission-Bishop*, 852 F. Supp. 2d 1232, 1236–37 (E.D. Cal. 2012); *HB Dev., LLC v. W. Pac. Mut. Ins.*, 86 F. Supp. 3d 1164, 1174 (E.D. Wash. 2015). In *Van Maanen*, for

example, the district court found the defendant's failure to identify a witness in its initial disclosure was harmless because the witness's "identity, position, location, and subject of the information he possessed were made known" to the plaintiff through other witnesses' depositions well before the discovery cut-off. *Van Maanen*, 852 F. Supp. 2d at 1237.

By contrast, in *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843 (9th Cir. 2014), the Ninth Circuit held the district court properly rejected the defendant's argument that it had placed the plaintiff on notice that certain undisclosed witnesses might testify because these witnesses had been mentioned in depositions. *Id.* at 862–63. The court emphasized that "[o]rderly procedure requires timely disclosure so that trial efforts are enhanced and efficient, and the trial process is improved." *Id.* The late disclosure of information "throws a wrench into the machinery of trial." *Id.*

Such is the case here. DeBie's passing references to the video came at his June 2024 deposition, seven months after Defendants served their November 2023 discovery responses, verified by DeBie under oath and signed by counsel under Rule 26(g), stating that all videos had been produced and that Defendants personally had no materials relating to Cindy Alfonso, who is featured in the withheld video. *See Defs' Responses*, p. 5, Dkt. 88-10. It also came after defense counsel assured Hardy's counsel at a meet-and-confer that all video from the protest had been disclosed. *See Eppink Decl.* ¶ 10, Dkt. 88-2. Hardy was entitled to take such assurances at face value and had no further obligation to "follow up" with duplicative discovery requests or additional meet-and-confer efforts.

To the contrary, the duty to supplement rested with Defendants, and the discovery "rules clearly suggest that a party may not shirk its disclosure obligations based on the

conduct of another party." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, No. 3:19-CV-00515-KDB-DSC, 2022 WL 884275, at *6 (W.D.N.C. Mar. 24, 2022) (citing Fed. R. Civ. P. 26(a)(1)(E)). Like other courts before it, the Court declines to accept Defendants' attempt to "blame the victim" for their own failure to follow the rules. *Id.*; *see also Simon Prop. Grp. v. mySimon*, No. IP 99-1195-C H/S, 2003 WL 1807135, at *9 (S.D. Ind. Mar. 26, 2003) (rejecting the plaintiff's "transparent effort to blame the victim" where the defendant had "served discovery requests that plainly covered…the newly discovered documents"). Defendants' failure to disclose the video "in the right form, at the right time" impeded discovery at the time of the nondisclosure, and DeBie's passing mentions of the video during his deposition did not render that "nondisclosure unsurprising or curable." *Samsung*, 314 F.R.D. at 198.

Nor was the failure substantially justified. Defense counsel's explanation is a candid one—the video was airdropped to his assistant, back-dated a year on her phone through some algorithmic quirk, and never made it to the firm's server, so its absence went unnoticed among the trove of videos that were produced. *Defs.' Opp.*, p. 2, Dkt. 97.

The Court accepts that account and finds that the nondisclosure was a mistake, not gamesmanship. There is no evidence of bad faith by DeBie or his counsel. But an honest explanation of how a mistake happened is not a justification for it, much less one "that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Counsel learned of the video at an August 2023 meeting at which DeBie handed it over. Dkt. 97-1 ¶ 4. Hardy served her requests for production two months later. *Pl.'s First Set of Disc. Requests*, Dkt. 88-8. In November 2023, Defendants served responses

denying that any undisclosed materials existed. A reasonable inquiry, simply comparing what DeBie provided against what went out the door, would have caught the error then, or at any point in the two years between that meeting and trial, including after DeBie twice mentioned the video at his June 2024 deposition. Rule 26(g) demands that much. Simple negligence may be forgivable, but it is not substantial justification.

**2. Appropriate Sanctions**

In selecting a sanction, the touchstone is restoration, not punishment. The aim is to put Hardy back in the position she would have occupied had the video been disclosed on time. *See Estate of Wallace v. City of Los Angeles*, 229 F.R.D. 163, 165 (C.D. Cal. 2005). With that in mind, the Court will award Hardy her reasonable fees and costs in the following categories: (1) researching, preparing, and presenting the motion for mistrial; (2) research and investigation relating to the untimely disclosed video; (3) the second round of depositions taken in October 2025; (4) post-mistrial supplemental expert disclosures, including expert charges; and (5) the present motion for sanctions and the accompanying motion to reconsider. Each flows directly from the late disclosure and would have been unnecessary had Defendants produced the video in 2023. *See Samsung*, 314 F.R.D. at 204; *Callow v. Riverview Marina*, No. CIV 03-129-S-BLW, 2006 WL 8445887, at *1 (D. Idaho Mar. 31, 2006).

The Court will also award the expenses the mistrial wasted. Those expenses include the transcripts of the aborted trial; the cost of flying Hardy's expert in from Hawaii and any other travel tied to his testimony, costs Defendants commendably

concede; and counsel's fees for the day before trial began and for the two days spent trying a case that must now be tried again.

Apart from those trial-eve and trial-day fees, the Court will not award Hardy's general trial-preparation fees. Most of the preparation here, including witness outlines, exhibits, and themes, retains its value for the retrial. Awarding those fees would overshoot restoration and shade into punishment, which neither Rule 37 nor equity require. Some duplication of effort is inevitable when a case must be prepared twice, *see Stanphill*, 2008 WL 2359730, at *7, so this ruling is without prejudice to a targeted, well-documented request after retrial for specific preparation that clearly had to be redone.

Hardy also requests that the Court inform the jury of Defendants' failure to disclose the video, which Rule 37(c)(1)(B) expressly permits, and which courts have done when circumstances so warranted. *See Stanphill*, 2008 WL 2359730, at *6; *Jaynes Corp. v. American Safety Indemnity Co.*, No. 2:10-CV-00764-MMD, 2014 WL 1154180, at *3 (D. Nev. Mar. 20, 2014). The Court will defer deciding this issue until closer to trial. Prior to trial, Hardy may submit a proposed instruction informing the jury that Defendants had a duty to produce the video in response to her discovery requests and did not make a timely disclosure. The Court will consider the proposed instruction and Defendants' objections at that time.

The Court will not require the certifications Hardy requests, however. Defendants and their counsel remain bound by their continuing obligation under Rule 26(e)(1) to supplement their discovery responses, and the fee award, together with any jury instruction the Court may give before trial, adequately addresses the untimely disclosure.

In sum, the motion for discovery sanctions will be granted in part and denied in part as set forth above. Within 21 days of this Order, Hardy shall submit an itemized accounting of the fees and costs claimed in the categories identified above.

**C. Motion for Additional Spoliation Remedies**

Finally, Hardy seeks a spoliation remedy for Kish's destruction of the notes he took about the alleged battery. "Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to properly preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Balla v. Idaho State Bd. of Correction*, 119 F. Supp. 3d 1271, 1282 (D. Idaho 2015) (citations and quotation marks omitted). "A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Id.* (quoting *Glover v. BIC Corp*., 6 F.3d 1318, 1329 (9th Cir. 1993)); *see also State Farm Fire & Cas. Co. v. Gen. Motors, LLC*, 542 F. Supp. 3d 1124, 1130 (D. Idaho 2021).

A party seeking sanctions for spoliation of non-electronic evidence must prove: "(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind'; and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence." *Balla*, 119 F. Supp. 3d at 1282 (quoting *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 1010 (C.D. Cal. 2013)).

**1. Duty to Preserve**

"The duty to preserve relevant evidence commences prior to litigation once a defendant reasonably anticipates an action may be forthcoming." *Sanders v. Univ. of Idaho, Coll. of Law*, 634 F. Supp. 3d 936, 940 (D. Idaho 2022) (citing *Silvestri v. General Motors*, 271 F.3d 583, 590 (4th Cir. 2001); *Kronish v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).

The Ninth Circuit's decision in *Gregory v. State of Montana*, 118 F.4th 1069, 1077 (9th Cir. 2024), illustrates when that duty attaches. In *Gregory*, a Montana probation officer allegedly used excessive force against the plaintiff during an encounter in a parking lot outside a probation office. The office's surveillance system captured the encounter. Despite the plaintiff's repeated requests that the footage be preserved, it was auto-deleted from the recording system. The officer faced a misdemeanor criminal charge arising from the encounter, and the Ninth Circuit had "little difficulty concluding" that the footage should have been preserved, since the State "had actual knowledge of its obligation to preserve the footage in connection with [the officer's] misdemeanor criminal case, and it was certainly foreseeable that civil litigation could arise from the disputed incident as well." *Id.* at 1078. Relying on *Gregory*, this Court reached the same conclusion earlier in this case, finding that the Idaho State Police "had actual knowledge of its obligation to preserve the footage in connection with [the plaintiff's felony] criminal case." *See Spoliation Order*, Dkt. 38 at 7 (quoting *Gregory*, 118 F.4th at 1078).[4]

---

[4] Rule 37(e) of the Federal Rules of Civil Procedure supplies a separate spoliation framework, but it reaches only electronically stored information. Kish's notes were written on a yellow pad, so the Court's inherent authority governs. *Compare Gregory*, 118 F.4th at 1077 (Rule 37(e) governs the loss of electronically stored information), with *Sanders*, 634 F. Supp. 3d at 940 (analyzing the destruction of handwritten interview notes under the court's inherent authority). *Gregory* and this Court's earlier ruling

Kish had an obligation to preserve his notes. By the time he wrote them, Hardy had been arrested for felony battery of a police officer, and Kish knew he was the alleged victim. *Trial Tr.* 25:16–26:14, Dkt. 85; *Kish Dep.* 135:1–136:7, Dkt. 29-10. DeBie, the officer assigned to prepare the police report and probable cause affidavit, had told Kish "to either make a supplemental report or write some good notes for himself." *Trial Tr.* 213:21–25, Dkt. 85. Kish did just that, at least initially—at the debrief meeting later that day, he wrote notes on a yellow pad describing Hardy and "some basic things that had happened"—but then threw them away that same day. *2d Kish Dep.* 27:15–28:12, Dkt. 89-3.

As in *Gregory*, criminal proceedings were not merely foreseeable when the evidence was destroyed. Hardy had already been arrested on a felony charge naming Kish as the victim, and DeBie was preparing the affidavit that would support it. Civil litigation was a foreseeable prospect as well. Defendants respond that Kish threw the notes away months before the criminal trial and years before Hardy filed this suit. *Defs.' Obj.*, p. 5, Dkt. 96. But the duty to preserve attaches once litigation is reasonably anticipated, not once it is filed. Under these circumstances, the Court finds that Kish knew or reasonably should have known to anticipate litigation when he threw the notes away. He therefore had an obligation to preserve the notes. *Gregory*, 118 F.4th at 1078; Dkt. 38 at 7.

**2. Culpable State of Mind**

---

on the lost video footage both involved electronically stored information, *see Spoliation Order*, pp. 4–5, 6–11, Dkt. 38, but their reasoning about when the duty to preserve attaches does not turn on the form the evidence took.

"Culpable state of mind" under the spoliation test does not require "bad faith." *Sanders*, 634 F. Supp. 3d at 941. Rather, sanctions for spoliation may be imposed upon a showing that there was notice of the potential relevance of the evidence to litigation. *Id.*; *Glover*, 6 F.3d at 1329. Indeed, "[a] party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (citation and quotation marks omitted).

Here, Kish had that notice. He wrote the notes because the investigating officer told him to document what happened, and he wrote them knowing that Hardy had been jailed on a felony charge naming him as the victim. Contemporaneous notes by the alleged victim of a felony battery, describing the accused and "some basic things that had happened," could hardly have clearer potential relevance to the criminal case then underway, or to the civil litigation that foreseeably followed.

Defendants do not engage with this standard. Relying on *State v. Edney*, 145 Idaho 694, 183 P.3d 782 (Ct. App. 2008), and *Arizona v. Youngblood*, 488 U.S. 51 (1988), they argue instead that Hardy has not shown that Kish threw the notes away in bad faith, "as part of a calculated attempt to prevent the discovery of exculpatory evidence." *Defs.' Obj.,* p. 4, Dkt. 96.

*Edney* and *Youngblood* are criminal due process cases. They ask whether an officer's failure to preserve evidence deprived the accused of due process, and the answer turns on bad faith. *See Cunningham v. City of Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003) ("A police officer's failure to preserve or collect potential exculpatory evidence

does not violate the Due Process Clause unless the officer acted in bad faith."). The bad-faith requirement keeps the Due Process Clause from imposing on the police "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Youngblood*, 488 U.S. at 58. It sets the constitutional floor on law enforcement's evidence-preservation duties in a criminal prosecution; it does not define the preservation duties that attach in civil litigation. *See Jones v. United States*, No. 2020-2182, 2022 WL 473032, at *5 (Fed. Cir. Feb. 16, 2022) ("These cases principally address constitutional requirements on law enforcement, which set a floor on collection duties but do not preclude additional non-constitutional requirements such as anti-spoliation duties in a civil case as a matter of judicial policy.").

The civil duty is broader. Sanctions for the destruction of evidence are available "not only for bad faith, but also for willfulness or fault by the offending party," *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Co.*, 982 F.2d 363, 368 n.2 (9th Cir. 1992), and the party who destroyed the evidence need have had no more than "some notice that the documents are potentially relevant," *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991); *accord Glover*, 6 F.3d at 1329. Hardy does not claim that the destruction of the notes violated her due process rights. She seeks civil spoliation remedies, which are governed by the standard set out above, one that pointedly does not require bad faith. *Sanders*, 634 F. Supp. 3d at 941; *see also Jones*, 2022 WL 473032, at *5 (an argument of this kind "conflates the minimum standards required in conducting a criminal investigation with the duty to preserve evidence applicable in this civil suit").

Defendants' reliance on cases discussing Federal Rule of Evidence 612, such as *United States v. Blas*, 947 F.2d 1320 (7th Cir. 1991), is similarly misplaced. Hardy does not contend that Kish used, or might use, the notes to refresh his recollection while testifying, so whether the notes would have been producible under Rule 612 is beside the point. The obligation at issue is the duty to preserve evidence for reasonably foreseeable litigation, not a testimonial-use production requirement. And in any event, Hardy formally requested all materials relating to her and the June 28, 2022 protest by both Rule 34 request and subpoena. *Pl.'s First Set of Disc. Requests*, pp. 4, 6, Dkt. 88-8; *Subpoena*, App. at 1–3, Dkt. 88-9. Had the notes survived, they would have been responsive. The Court finds that Kish destroyed the notes with the culpable state of mind the spoliation test requires.

**3. Relevance**

Finally, the destroyed notes were relevant to Hardy's claims. Because the notes no longer exist, their contents can never be known with certainty. But that uncertainty cuts against Kish, not Hardy. "[B]ecause the relevance of . . . [destroyed] documents cannot be clearly ascertained because the documents no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed documents." *Leon*, 464 F.3d at 959 (citation and quotation marks omitted) (alteration in original). Indeed, spoliation of evidence "raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 998 (N.D. Cal. 2012).

What little is known about the notes only confirms the presumption. They were the alleged victim's contemporaneous account of "some basic things that had happened," along with his description of Hardy, including her race, gender, build, and clothing. *2d Kish Dep.* 27:20–28:8, Dkt. 89-3. Kish testified that he does not recall what else the notes said. *Id.* Those first impressions bear directly on Hardy's retaliatory arrest, fabrication of evidence, and malicious prosecution claims. And the Court has already found that Kish's later comments about Hardy's arrest were relevant to these claims. *See Mots. in Limine Order*, pp. 13–14, Dkt. 74.

Kish insists that the notes "were not significant," *2d Kish Dep.* 27:15–19, Dkt. 89-3, but the state judge who acquitted Hardy was "disappointed in the nature of the discovery" provided by the State and noted, among a number of concerns, that "there were no statements by [Kish]" produced, *State Trial Tr.* 61:5–13, 66:21–22, Dkt. 29-9. Because Kish threw his notes away, no one will ever know whether they described events inconsistent with the police report and probable cause affidavit. The Court therefore finds that the destroyed notes were relevant to Hardy's claims and that Kish spoliated evidence when he threw them away.

**4. Appropriate Remedy**

Having found spoliation, the Court must fashion a remedy "commensurate to the spoliating party's motive or degree of fault in destroying the evidence and the degree of prejudice suffered by the movant," selecting "the least onerous sanction" that fits. *Balla*, 119 F. Supp. 3d at 1282 (citation omitted); *see Apple*, 888 F. Supp. 2d at 992. Hardy

requests an adverse inference instruction and the reasonable fees incurred in bringing this motion.

An adverse inference instruction rests on two rationales. The first is evidentiary. It reflects the "common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document" than a party who preserves it. The second is prophylactic, since the instruction deters parties from destroying relevant evidence. *Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 981 (9th Cir. 2009).

Both fit here. Kish's destruction of the notes was willful in the sense the case law requires, because he had notice of their potential relevance, and Hardy is left with no way to test his assurance that they were innocuous. An instruction will help fill the evidentiary gap Kish created and deter officers from purging their notes about arrests in the future. "The purpose of an adverse inference is not to impose any moral blame but to restore evidentiary balance[,] and the risk should fall on the party responsible for the loss." *Victorino v. FCA US LLC*, No. 16CV1617-GPC(JLB), 2017 WL 4541653, at *9 (S.D. Cal. Oct. 11, 2017) (citing *Residential Funding Corp. v. DeGeorge Fin. Corp*., 306 F.3d 99, 108 (2d Cir. 2002)); *see also Glover*, 6 F.3d at 1329 (only a "minimum link of relevance" is required to permit an adverse inference instruction).

As in *Sanders*, however, the Court finds that a permissive, rather than mandatory, instruction is appropriate. A permissive adverse inference instruction is "the least harsh instruction [in that it] permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." *Apple Inc. v. Samsung*

*Elecs. Co.*, 881 F. Supp. 2d 1132, 1150 (N.D. Cal. 2012) (citation and quotation marks omitted); *see Sanders*, 634 F. Supp. 3d at 945 (imposing a permissive adverse inference instruction for the destruction of handwritten notes). The parties may submit proposed instructions for the Court's consideration, and any objections may be addressed at the jury instruction conference during the course of trial.

Finally, as with Hardy's earlier motion in limine relating to spoliation, the Court will award Hardy her reasonable fees incurred in bringing this motion. *See Mots. in Limine Order*, p. 8, Dkt. 74. Hardy shall include those fees in the itemized accounting ordered above.

**ORDER**

**IT IS ORDERED that:**

1. Plaintiff's Motion to Partially Reconsider Summary Judgment Decision (Dkt. 88) is **GRANTED**.

2. Plaintiff's Motion for Discovery Sanctions (Dkt. 89) is **GRANTED in part** and **DENIED in part**, as set forth above. Within 21 days of this Order, Hardy shall submit an itemized accounting of the fees and costs claimed in the categories identified above.

3. Plaintiff's Motion for Additional Spoliation Remedies (Dkt. 93) is **GRANTED in part** and **DENIED in part**, as set forth above.

DATED: August 19, 2026

B. Lynn Winmill
U.S. District Court Judge